IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71056-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JICOREY RICCARDO BRADFORD and | ) | |
| JAMES EARL GRAY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellants. | ) | FILED: March 24, 2014 |
| | ) | |

BECKER, J. — Codefendants JiCorey Bradford and James Gray were convicted of drive-by shooting and other charges arising from a hostile encounter with two men in Tacoma. We reverse both appellants' convictions for drive-by shooting because of ineffective assistance of counsel. Because the evidence was insufficient, we also reverse Bradford's conviction for possession of a stolen firearm.

The shootings occurred on the afternoon of October 7, 2011, near an apartment complex where Bradford's brother lived. According to testimony at trial, two or three shots were fired into a Chevy Caprice occupied by Dandre Long and Kerry Edwards. The shots came from another car occupied by defendants Bradford and Gray. The cars then sped off in different directions but

soon met up again. Either Bradford or Gray got out and fired more shots into the Caprice.

Edwards and Long left the scene; it was some time later that they contacted the police. Bradford and Gray attempted to leave, but their car crashed into an embankment near a fire station. Police soon arrived and found Bradford sitting in the car when they arrived. Gray ran away and was not arrested until sometime later.

Near Bradford on the ground, police found a gun that was later matched to shells found in the Caprice or near the locations of the shootings. At least 13 shots had been fired at the Caprice. One bullet was found lodged in the back of the driver's headrest and another was recovered from the back seat.

As he was being transported to the police station, Bradford identified a photograph of Gray as the person who was with him during the shooting. Bradford told police it was he, not Gray, who fired the shots. Bradford maintained he fired in self-defense because Edwards had pointed a gun at him and Gray from the outset.

The information alleged that Bradford and Gray acted as accomplices in the shootings. On May 14, 2012, a joint trial began with Bradford and Gray as codefendants. Each of them was charged with one count of first degree assault with a firearm against Edwards, one count of first degree assault with a firearm against Long, one count of drive-by shooting, and one count of possession of a stolen firearm. In addition, Bradford was charged with second degree unlawful

possession of a firearm, and Gray was charged with first degree unlawful possession of a firearm. The trial court dismissed charges of cocaine possession.

The trial was challenging because the four participants gave differing accounts of what happened. According to the defendants, Bradford was the shooter. Edwards identified Gray as the shooter at trial. Edwards had earlier identified Bradford as the shooter when police showed him a photo montage.

The defendants' theory was that they should be acquitted of the shooting charges on the ground of self-defense because Bradford fired at the Caprice only after Edwards pointed a gun at them. Edwards and Long testified that neither of them had a gun. Edwards, the State's chief witness, admitted that he had recently pleaded guilty to 12 or 14 felonies. All but two of the charges against him had been dismissed in exchange for his testimony against gang members in other cases, and he had served 1 year in prison instead of 30. Edwards testified that his felony convictions prevented him from possessing firearms and he would face a 30-year sentence if he were found to have violated his plea deal by possessing a firearm.

The State's theory was that no one in the Caprice had a gun, and accordingly, there could be no finding of self-defense. In closing arguments, both sides agreed that the central issue was whether Edwards had a gun. Edwards denied it, and the defense impeached him with a witness who said Edwards had recently threatened her with a gun.

3

Edwards testified that the other car pulled up next to the Caprice as he and Long were driving away from an apartment building. Edwards testified that neither he nor Long said anything to the defendants. He said Gray started shooting and as he and Long drove away, they heard the back window burst. He testified that he looked back and saw Gray standing in the middle of the street, saw him fire four or five shots, and then heard more shots hit the Caprice as he ducked down. Edwards said Gray started shooting again when the two cars met for the second time, and he heard six or seven more shots hit the car. Edwards testified he saw Bradford in the passenger seat of Gray's car before the first shots but did not see Bradford at all during the second round of shooting.

Long testified that he knew Gray but did not see him on the day of the incident. Long denied seeing Bradford. He recalled having a brief encounter with some men at the apartment complex. Then, he said, someone got out of a car and started shooting. He thought different people were involved in the second shooting.

Bradford testified that he and Gray were stopped near the apartment building when the Caprice pulled up, hostile words were spoken by its occupants, and the passenger (Edwards) leaned forward and pointed a gun at him. Bradford testified that he reacted by reaching under his seat, pulling out his gun, and firing two or three times from inside the car. He said both cars drove off, but then the Caprice suddenly reappeared, passed them, and spun out in front of them, cutting them off. Bradford said he saw Edwards holding a gun out the window.

4

He testified that when he saw the gun, he reacted on instinct and fired once or twice from inside the car, but feeling he was in the direct line of fire, he got out of the car and ran toward the back for cover, firing at the other car as he ran. Bradford testified that Gray never possessed the gun and had not known there was a gun in the car.

Gray testified that he recognized Long when he saw him in the Caprice and that Long was verbally aggressive. He said he noticed Bradford was ducking down like he was trying to hide from someone with a gun. Then Bradford pulled a gun out from under his seat and fired two shots, the first one from within the car and the second one after he had gotten out of the car.

Gray said Bradford got back in the driver's seat and drove off, then Long's car appeared again and cut them off. He said Bradford ducked and got out of the car. Gray said he heard shots and moved to the driver's seat because he was scared and wanted to leave. Then, he said, Bradford got into the passenger seat and they took off. Gray lost control of the car and crashed it. Gray testified that he ran away and hid in a tree for several hours before going home.

There were several other witnesses who saw or heard some of the shots. None of them identified the shooter.

On May 24, 2012, the jury rendered its verdict. Bradford was convicted of drive-by shooting, first degree assault with a firearm against Long, unlawful possession of a firearm (a crime he conceded he was guilty of), and possession of a stolen firearm. The jury could not reach a decision as to the count charging

5

Bradford with first degree assault against Edwards.

Gray was convicted only of drive-by shooting and unlawful possession of a firearm. Gray was found not guilty of the two counts of first degree assault and not guilty of possession of a stolen firearm.

Bradford and Gray filed separate appeals. The appeals have been consolidated. Gray has submitted a joinder in coappellant Bradford's arguments. See RAP 10.1(g)(2).

## SELF-DEFENSE INSTRUCTION

Bradford's defense centered on his claim that he fired only in self-defense when he saw Edwards pointing a gun. The trial court gave a standard self-defense instruction. By the terms of the first paragraph, the self-defense instruction applied only to the charges of first degree assault. "It is a defense to a charge of assault in the first degree that the force used was lawful as defined in this instruction."

Bradford contends the trial court erred by failing to instruct the jury that self-defense was an available defense for the drive-by shooting charge. There was no objection to the instruction below. Bradford contends, however, that the alleged error may be raised for the first time on appeal as manifest constitutional error. He also claims ineffective assistance of counsel.

Appellate courts analyze unpreserved claims of error involving self-defense instructions on a case-by-case basis to assess whether the claimed error is manifest constitutional error. State v. O'Hara, 167 Wn.2d 91, 104, 217

P.3d 756 (2009). O'Hara applies because instruction 16 was not, on its face, erroneous. It did not relieve the State of its burden to disprove that Bradford acted in self-defense. See O'Hara, 167 Wn.2d at 108. The instruction was modeled after WPIC 17.02, which has been upheld as a correct instruction on the law of self-defense. See State v. Prado, 144 Wn. App. 227, 247-48, 181 P.3d 901 (2008). The problem is not that the instruction erroneously stated the law of self-defense. The problem is that it did not make self-defense applicable to the charges of drive-by shooting. Accordingly, we do not find manifest constitutional error. The issue is more appropriately addressed in the context of ineffective assistance of counsel. See State v. Woods, 138 Wn. App. 191, 197, 156 P.3d 309 (2007).

To prevail on a claim of ineffective assistance, Bradford must show that (1) his attorney's representation was deficient and (2) he was prejudiced. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An ineffective assistance claim is reviewed de novo because it presents mixed questions of law and fact. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010). Counsel is ineffective when counsel's conduct could not have been a legitimate strategic or tactical choice. Woods, 138 Wn. App. at 197.

Under RCW 9A.36.045(1), a person is guilty of drive-by shooting when he recklessly discharges a firearm in a manner which creates substantial risk of death or serious physical injury to another person, "and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used

to transport the shooter or the firearm, or both, to the scene of the discharge."

The State does not dispute that self-defense is available as a defense to a charge of drive-by shooting. The State does not identify a strategic reason why defense counsel would want the jury to be instructed on self-defense as to the assault charges but not the drive-by shooting charge. Self-defense was Bradford's only defense, as he admitted to being the shooter. The conduct underlying the drive-by shooting was the same as the conduct underlying the first degree assault charges. Counsel argued the assault and drive-by shooting charges would rise or fall together, depending on whether the jury believed Edwards had a gun. We conclude the first prong of the Strickland test is met. Counsel for Bradford was ineffective for failing to ensure that the self-defense instruction applied to the drive-by shooting charge as well as the assault charges. The same is true of counsel for Gray, who has joined in Bradford's argument on appeal. To convict Gray of drive-by shooting, the jury must have concluded he was either the shooter (as the State claimed) or an accomplice to Bradford.

The second prong of the test is demonstrating prejudice. A defendant shows prejudice where there is a reasonable probability that the result of the trial would have been different absent the challenged conduct. Strickland, 466 U.S. at 694.

The State contends Bradford cannot show prejudice because "there is reason to question" whether there was sufficient evidence to justify a self-defense instruction. In particular, the State argues the jury could not have found

8

that Bradford subjectively feared he was in imminent danger or that he exercised no more force than was reasonably necessary. This argument is unconvincing. A self-defense instruction must be given if there is "'any evidence'" the person acted in self-defense. State v. Adams, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). Bradford's testimony provided such evidence. The trial court did give a self-defense instruction pertaining to the charges of first degree assault, presumably recognizing there was sufficient evidence of self-defense.

Bradford argues that the prejudice of counsel's error is demonstrated by the jury's inability to reach a verdict on the charge that he committed first degree assault against Edwards. The suggestion is that if some jurors found Bradford was justified in shooting at Edwards, likely they would have also found he was justified in firing shots from the car he was in or the area near it—if instructed that self-defense applied to the drive-by shooting charges.

All jurors acquitted Gray of both assaults, so they most likely agreed Bradford was the shooter. All jurors convicted Bradford of assaulting Long. All jurors convicted both defendants of drive-by shooting. Possibly, the jury's inability to agree that Bradford assaulted Edwards means that at least some jurors found that Edwards had a gun and Bradford acted in self-defense as to Edwards. If so, the jury's decision to convict both defendants of drive-by shooting possibly means they found that the shooting at some point ceased to be justified by self-defense and was then simply reckless as to other persons in the vicinity. The problem is that nothing in the record demonstrates a single

9

coherent rationale for the verdicts. The State did not walk the jurors through the instructions and verdict form in closing argument. The prosecutor left the complex task of relating the instructions to the facts completely up to the jury: "In many cases, I talk about instructions, and in this case I am not going to. I said I was going to be exceedingly short. And frankly, I am finished. Your decision."

If some jurors believed that at least some of Bradford's shots were fired in self-defense, there is a reasonable possibility the same jurors would have found the drive-by shooting justified by self-defense if they had been given an instruction that permitted them to do so. We conclude that the failure of both defense counsel to ensure that the self-defense instruction applied to drive-by shooting as well as to assault was both deficient performance and prejudicial. As a result, Bradford's and Gray's convictions for drive-by shooting must be reversed.

## SUFFICIENCY OF THE EVIDENCE

Bradford and Gray both argue the State presented insufficient evidence for a rational jury to find them guilty of certain counts. Where a criminal defendant challenges the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all of the inferences that can reasonably be drawn therefrom. Salinas, 119 Wn.2d at 201. "'Determinations of credibility are for the

10

fact finder and are not reviewable on appeal.'" State v. Brockob, 159 Wn.2d 311, 336, 150 P.3d 59 (2006), quoting State v. Hughes, 154 Wn.2d 118, 152, 110 P.3d 192 (2005).

*Gray's Conviction for Drive-by Shooting*

Gray claims there was insufficient evidence to convict him of drive-by shooting. If so, he would be entitled to have the charge dismissed instead of simply having the conviction reversed for ineffective assistance as discussed above.

Gray and Bradford testified that Bradford did the shooting and Gray did not know Bradford had a gun in his car until Bradford brandished it. The only person who identified Gray as a shooter was Edwards. Gray argues that Edwards' testimony was too self-contradictory and ambivalent to prove that he fired the gun.

This court defers to the jury on issues of credibility. Gray cites no authority holding that the testimony of a witness must be internally consistent. The jurors could have chosen to believe those portions of Edwards' testimony in which he identified Gray as the shooter. Even if they did not, the jurors did not have to find that Gray was the actual shooter in order to convict him of drive-by shooting. The jury was instructed on accomplice liability. If the jury found that only Bradford fired shots, it nevertheless could have also found that Gray became an accomplice to Bradford by standing by with the car while Bradford got out of the car and fired shots. Gray's conduct could fairly be seen as waiting for

11

Bradford to finish shooting in order to help him get away. Thus, we reject Gray's challenge to the sufficiency of the evidence to support the conviction for drive-by shooting.

*Gray's Conviction for Unlawful Possession of a Firearm*

Because of prior felony convictions, Gray could not possess a firearm. Knowing possession is an essential element of the charge. State v. Anderson, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000). Possession may be actual or constructive. State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). A jury can find a defendant constructively possessed a firearm if the defendant has dominion and control over it or over the premises where the firearm was found. Echeverria, 85 Wn. App. at 783. A vehicle qualifies as "premises" for purposes of this inquiry. State v. Mathews, 4 Wn. App. 653, 656, 484 P.2d 942 (1971). Close proximity alone is not enough to establish constructive possession; other facts must enable the trier of fact to infer dominion and control. State v. Spruell, 57 Wn. App. 383, 388-89, 788 P.2d 21 (1990). The totality of the circumstances must be considered. State v. Collins, 76 Wn. App. 496, 501, 886 P.2d 243, review denied, 126 Wn.2d 1016 (1995).

Gray and Bradford testified that Gray did not know Bradford had a gun and Bradford was the only person who fired it. But as discussed above, the jury could have believed Edwards' testimony that Gray was the shooter. If the jury concluded Gray fired the gun, he obviously possessed it.

Alternatively, the jury may have believed that although Gray was not the

12

shooter, he remained in the car even after Bradford got out and then, when Bradford got back in, Gray drove the getaway vehicle with Bradford inside, all the time knowing there was a firearm inside the car.

Under either scenario, there was sufficient evidence for a reasonable jury to find that Gray knowingly possessed a firearm.

*Bradford's Conviction for Possession of a Stolen Firearm*

The jury was instructed that the State had to prove, among other things, that Bradford possessed, carried, delivered, sold or was in control of a stolen firearm, and "acted with knowledge that the firearm had been stolen."

Bradford stipulated that he knew he was not permitted to possess a firearm because of his prior felonies. He admitted he was guilty of unlawful possession of a firearm. He does not dispute that the firearm he had in his possession was stolen. He contends, however, that there was insufficient evidence that he knew it was stolen.

Bradford testified that he acquired the gun in August 2011. He said he needed the gun for protection because someone had threatened to shoot him in an unrelated dispute over a woman. He testified that a man he met at a gas station had a gun in his car and offered to sell it for $250, and he decided to buy it. Bradford testified that he checked the gun's serial number, and because it was not scratched off, he assumed the gun was not stolen.

Bare possession of stolen property is not enough to justify a conviction. But possession of recently stolen property in connection with other evidence

13

tending to show guilt is sufficient to show knowledge. State v. McPhee, 156 Wn. App. 44, 62, 230 P.3d 284, review denied, 169 Wn.2d 1028 (2010); see also State v. Couet, 71 Wn.2d 773, 776, 430 P.2d 974 (1967) (evidence is sufficient if the defendant gives a false or improbable explanation for possessing the stolen property). The State contends there was sufficient evidence of knowledge under McPhee and Couet because the gun used by Bradford was recently stolen and Bradford's explanation about how he came to be in possession of it was improbable.

The gun owner testified at the May 2012 trial that his gun had been stolen from his home in Graham perhaps as early as 2008, or at least a "couple years ago." A "couple years ago" would have been around May 2010, more than a year before Bradford admitted acquiring it or when the shooting occurred in October 2011. The lapse of time was too great to prove that the gun had been "recently" stolen. Compare McPhee (two days) and Couet (several weeks). And Bradford's explanation about how and where he acquired the gun was not inherently improbable. We conclude there was insufficient evidence of the essential element of knowledge.

*Statements of Additional Grounds*

Bradford and Gray submitted separate statements of additional grounds pursuant to RAP 10.10. Neither warrants further review. Bradford's statement alleges ineffective assistance of counsel with respect to the wording of the self-defense instruction, and he also asserts there should have been instructions on

14

lesser included offenses of the assault charges. The statement raises no possibility that the latter claims are meritorious. Gray's statement challenges the adequacy of Edwards' identification of him as the shooter. This claim was adequately covered by appellate counsel.

The drive-by shooting convictions of Bradford and Gray are reversed due to ineffective assistance of counsel. Bradford's conviction for possession of a stolen firearm is reversed for insufficiency of the evidence. Gray's conviction for unlawful possession of a firearm is affirmed. Both cases are remanded for further proceedings not inconsistent with this opinion.

Becker, J.

WE CONCUR:

Cox, J.