[No. 15180-8-III.   Division Three.   April 17, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSE ECHEVERRIA, *Appellant.*

778

*Charles E.F. Alden,* for appellant.

*Steven M. Lowe, Prosecuting Attorney,* and *James F. Bell* and *Paige L. Sully, Deputies,* for respondent.

SCHULTHEIS, A.C.J. — Juvenile Jose Echeverria challenges the sufficiency of the evidence supporting the adjudication that he is guilty of unlawful possession of a firearm and "unlawful possession" of a dangerous weapon, charged as furtively carrying a martial arts throwing star with intent to conceal it. We affirm in part and reverse in part.

On June 2, 1995, Mr. Echeverria was charged with three offenses: count one, possession of a firearm by a minor in violation of former RCW 9.41.040(1)(e); count two, possession of a dangerous weapon in violation of RCW 9.41.250, in that he, "with intent to conceal such weapon, did furtively carry a metal throwing star, a dangerous weapon"; and count three, driving a motor vehicle without a valid operator's license in violation of RCW 46.20.021.

On August 1, 1995, an adjudication hearing was held before the Juvenile Court Commissioner. According to Pasco Police Officer Donna French, a car full of juveniles drove past her just before 4:00 a.m. on April 30, 1995. It was "way after curfew" and the police had recently received several stolen vehicle reports, for which they believed juveniles were responsible. Officer French followed the car and called in a license plate check. She had not yet heard back on the car's ownership status when it pulled into the parking lot of an apartment/trailer complex. She followed.

The car stopped and Mr. Echeverria got out of the driver's seat and started walking toward the complex. Officer French recognized him. She knew he was 15 years old and did not have a driver's license, was on probation and was out past curfew, so she got out of her vehicle, called out to him and told him to stop. Meanwhile, two other passengers had gotten out and two more were getting out; she told them to stop, too. Mr. Echeverria told Officer French to "Fuck off." She grabbed him and was putting handcuffs on him when Pasco Police Officer Brent Cook arrived on the scene. Officer French walked Mr. Echeverria back to her vehicle and put him in it, then explained briefly to Officer Cook what was happening. She added that one passenger had walked off while she was dealing with Mr. Echeverria.

Officer Cook kept an eye on the situation while Officer French returned to the juveniles' car. The driver's door was open and she saw "the front of the gun, probably about three inches of the barrel[,] sticking out from directly under the driver's seat . . . ." She "removed the gun and there was a throwing star [lying] right there with it"—"kind of next to it." When she grabbed the gun, her hand hit it, but the throwing star was not visible.

The police contacted the registered owner of the car, Jesus Calderon, and confirmed it was not stolen. An officer brought him to the scene and Mr. Calderon retrieved the car and his brother-in-law, Robert Vanagus, who was one

of the juvenile passengers. Officer French never asked whom the weapons belonged to and fingerprinting was not attempted. She did not know whether Mr. Echeverria knew she was behind him when he pulled into the parking lot; she had not activated her police lights.

Officer Cook confirmed that he arrived on the scene just as Officer French was trying to handcuff Mr. Echeverria, who was "being real verbal." Officer Cook walked with them to Officer French's vehicle and she quickly told him what was happening. Then she walked back to the juveniles' car and Officer Cook saw her reach in and "pull out the handgun." He explained: "It seemed as if when she looked in there, she pulled it out right away."

The State rested after the two officers testified. Mr. Echeverria's attorney moved for an acquittal on the weapons charges. He argued there was no evidence that Mr. Echeverria knew either weapon was under the seat, and the car was not his, so the State had not proved constructive possession. The State argued he knew the weapons were there and that they were in fact his. The Commissioner reserved ruling so that he could review the law on constructive possession.

Mr. Echeverria testified he was 15 years old, did not have a driver's license and was driving the car. According to him, Robert Vanagus had been driving the car and Mr. Echeverria thought it was his. They were on their way to a friend's trailer at the apartment/trailer complex, but had stopped at a mini mart and Mr. Vanagus let him drive the rest of the way because he was tired. Mr. Echeverria testified he did not know Officer French was behind him until she called him by his nickname "Hollywood" and told him to stop. He said more than one passenger walked away, but Officer French saw only one. He got mad at her for bothering him and letting the others leave, so he "told her like 'Fuck you.'"

Mr. Echeverria testified he had not seen the gun until she pulled it out and had not known it was under the seat. He also testified he did not even know she had found a

throwing star, too, until his attorney told him later in detention. Finally, he admitted driving vehicles without a license on two other occasions in unrelated incidents.

A week later, on August 8, the Commissioner found Mr. Echeverria guilty of the three counts of driving without a license. The Commissioner then addressed the two weapons charges. Having reviewed cases on constructive and unwitting possession of drugs, the Commissioner explained his decision:

> What this case comes down to is do you believe or do you not believe that the respondent knew the gun and the throwing star were under the seat. I can only conclude that he did because the gun was in plain sight. It was sticking out. The officer walked up to the car and the first thing she saw was the gun sticking out from underneath the seat. It wasn't shoved under there at all. So I'm going to find him guilty on both of those counts.

The court's order of disposition reflects Mr. Echeverria was found guilty of "possession of firearm by a minor, possession of a dangerous weapon, and no valid operator[']s license."

Mr. Echeverria contends the evidence is insufficient to establish constructive possession of the weapons because there is no evidence that he knew or should have known there was a gun under the seat, or a martial arts throwing star.

■■ Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Naranjo*, 83 Wn. App. 300, 303, 921 P.2d 588 (1996); *State v. Fager*, 73 Wn. App. 617, 619, 870 P.2d 336 (1994). At the adjudication hearing, the court is required to state its findings, including the evidence relied upon, and enter its decision, JuCR 7.11(c), and to reduce them to writing if the case is appealed, JuCR

7.11(d). This court then reviews its findings[1] to determine whether they are supported by substantial evidence, which is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the allegation. *State v. Halstien,* 122 Wn.2d 109, 128-29, 857 P.2d 270 (1993).

In its oral decision, the court found Mr. Echeverria knew that both weapons were under his seat because "the gun was in plain sight. It was sticking out. The officer walked up to the car and the first thing she saw was the gun sticking out from underneath the seat. It wasn't shoved under there at all." The unchallenged finding that the gun was in plain sight is a verity on appeal. The question is whether it supports the court's conclusion that Mr. Echeverria constructively possessed the two weapons.

Count one, the gun. RCW 9.41.040 makes it a class C felony for a person under the age of 18 to own, possess or control a firearm, except under specific circumstances not applicable in this case. Possession may be actual or constructive, and constructive possession can be established by showing the defendant had dominion and control over the firearm or over the premises where the firearm was found. *See State v. Staley,* 123 Wn.2d 794, 798, 872 P.2d 502 (1994); *State v. Callahan,* 77 Wn.2d 27, 29-30, 459 P.2d 400 (1969). The ability to reduce an object to actual possession is an aspect of dominion and control. *State v. Hagen,* 55 Wn. App. 494, 499, 781 P.2d 892 (1989). Given the unchallenged finding the gun was in plain sight at Mr. Echeverria's feet and the reasonable inference that he therefore knew it was there, a rational trier of fact could find Mr. Echeverria possessed or controlled the gun that was within his reach.

Count two, the martial arts throwing star. RCW 9.41.250 describes three distinct "dangerous weapons" of-

---

[1]We remind counsel that review of the court's findings and conclusions is not possible if neither party designates them for inclusion in the clerk's papers. It is not this court's job to track them down.

fenses, each of which has different elements: (1) manufacturing, selling, disposing or possessing specified instruments or weapons (not including a throwing star); (2) furtively carrying with intent to conceal any dangerous weapon; and (3) using a firearm silencer. Though the information designated count two "possession" of a dangerous weapon, it alleges Mr. Echeverria, "with intent to conceal such weapon, did furtively carry a metal throwing star, a dangerous weapon." The Commissioner found Mr. Echeverria guilty of possession only. That was based on its finding that the gun was in plain sight. There was no finding that the throwing star was visible, and Officer French testified it was not. The evidence does not support the court's finding of constructive possession. Close proximity alone is not enough. *State v. Spruell*, 57 Wn. App. 383, 388, 788 P.2d 21 (1990). Furthermore, there was no evidence before the court that possession of a throwing star is prohibited. RCW 9.41.250(1) is very specific and does not by its plain terms encompass the device at issue.

The State did not prove count two *as charged*, because there was no evidence that Mr. Echeverria *carried* the throwing star in any manner, furtively or otherwise. In *State v. Myles*, 127 Wn.2d 807, 903 P.2d 979 (1995), the Court rejected a void for vagueness challenge to this statute. Though the Court was concerned primarily with the furtiveness element, it also considered the meaning of "carry." Citing WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 343 (1966), the Court stated "applicable definitions include 'to move while supporting,' and 'to hold, wear, or have upon one's person.'" *Myles*, 127 Wn.2d at 813. Thus, the Court concluded, "carrying" includes having the dangerous weapon on one's person, not just having it in one's hand. *Id.* at 813.

The State did not argue, and the court did not find, that Mr. Echeverria's alleged constructive possession of the throwing star under the seat satisfied the statutory elements of carrying it with intent to conceal it. Indeed, the record does not establish any consideration of the need to establish more than mere constructive possession.

We affirm the adjudication of guilt on count one. We reverse the adjudication of guilt on count two and order the charge dismissed.

THOMPSON and BROWN, JJ., concur.