IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2014 AUG 11 AM 10: 35   COURT OF APPEALS DIV 1 STATE OF WASHINGTON   FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71962-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRIAN EDWARD TURNER, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 11, 2014 |

SCHINDLER, J. — A jury convicted Brian Edward Turner of unlawful possession of a stolen motor vehicle and possession of motor vehicle theft tools. Turner argues insufficient evidence supports the convictions. Turner also contends the State failed to prove his criminal history for purposes of calculating his offender score, and the record does not support the court's finding that he had the ability to pay court costs. We affirm.

FACTS

On November 18, 2012, Rindel Caba reported to police that his white two-door 1991 Honda Civic was stolen.

On December 13, as Lakewood Police Lieutenant Chris Lawler was driving northbound, he noticed a Honda in the southbound lane. Lieutenant Lawler said the car was going "pretty quick" and did not come to a complete stop at the intersection. Lieutenant Lawler also testified that the woman sitting in the passenger seat looked at

him with a "surprised look" as the car drove past. Lieutenant Lawler ran the license plate number of the vehicle. The number matched the license plate number for the stolen Honda. Lieutenant Lawler immediately drove in the direction the Honda had been traveling.

Three minutes later, Lieutenant Lawler found the vehicle parked in front of an apartment complex with the engine running. The woman was still sitting in the front passenger seat and no one else was in the car. Lieutenant Lawler saw a man, later identified as Brian Edward Turner, emerge from a breezeway to the apartment units and walk toward the vehicle. Turner was carrying a red backpack and several bottles of what appeared to be alcohol. Turner placed the backpack and bottles in the car behind the driver's seat. As Turner "was preparing to get into the driver seat," Lieutenant Lawler arrested him. When Lieutenant Lawler looked inside the car, he saw that the steering column was severely damaged, and observed a flat-blade screwdriver lying on the front passenger-side floor.

The State charged Turner with unlawful possession of a stolen vehicle and making or possessing motor vehicle theft tools.

Rindel Caba, the owner of the stolen vehicle, and Lieutenant Lawler testified at trial. The defense theory at trial was that Turner did not know the vehicle was stolen and he was never in actual or constructive possession of the Honda or of the screwdriver.

Caba testified that after his stolen vehicle was recovered, the steering column cover was broken off and there was tape around the steering column "like they broke it off to get into the rest of the ignition." Caba testified that the ignition control switch and

2

heater climate control were also damaged, and there were scratches by the radio and on the steering column cover. Caba said the bag of men's clothing and the screwdriver found in the car did not belong to him. Caba testified that he did not know Turner and did not give him permission to drive his car.

Lieutenant Lawler testified that he saw other people around the apartment complex, including a maintenance worker and a man walking out of the breezeway "a little bit behind [Turner]" who "appeared to be unrelated." Lieutenant Lawler testified that when he arrested Turner, the other man turned and went in the other direction away from the car. Lieutenant Lawler did not see the other man go near the stolen vehicle or put any items in the car.

Lieutenant Lawler testified that Turner appeared to be about to get into the car when he arrested him:

> It looked like [Turner] had finished putting what it was behind the seat and was preparing to get into the driver seat almost like he was going to raise his leg to get in there. I thought he was getting into the car and I didn't want to let him get in the car.

Lieutenant Lawler testified that the car's steering column "was severely damaged." Lieutenant Lawler stated that a flat-blade screwdriver, like the one he saw in the vehicle, "can be used to move the mechanism under the column to start the car." Lieutenant Lawler testified that neither Turner nor the female passenger had keys to the car, a bill of sale, or registration or title for the vehicle.

At the end of the State's case, the defense made a motion to dismiss, arguing the State did not prove beyond a reasonable doubt that Turner possessed the car or the screwdriver or that he knew the car was stolen. The court denied the motion. The defense did not present any witnesses.

3

The jury found Turner guilty of unlawful possession of a stolen vehicle and possession of motor vehicle theft tools. The court sentenced Turner to 15 months confinement and ordered Turner to pay legal financial obligations, including fees for a court-appointed attorney of $1,000 and a criminal filing fee of $200.

ANALYSIS

Sufficiency of the Evidence

Turner contends he is entitled to dismissal because the evidence does not support the convictions for unlawful possession of a stolen motor vehicle and possessing motor vehicle theft tools.

The State must prove each essential element of the crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Oster, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). In deciding whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. Salinas, 119 Wn.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Turner asserts there was insufficient evidence to convict him of possession of a stolen motor vehicle because the State only proved he was in proximity to the car, not that he had actual or constructive "possession" of the vehicle or that he knew the car was stolen.

"A person is guilty of possession of a stolen vehicle if he . . . possesses . . . a stolen motor vehicle." RCW 9A.56.068(1). Knowledge that the property was wrongfully appropriated is an essential element of the crime of possession of stolen property. State v. Hatch, 4 Wn. App. 691, 693, 483 P.2d 864 (1971). "Possession may be actual or constructive, and constructive possession can be established by showing the defendant had dominion and control over the [property] or over the premises where the [property] was found." State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). "Actual possession means that the goods are in the personal custody of the person charged with possession." State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

Close proximity alone is not enough to establish constructive possession; other facts must enable the trier of fact to infer dominion and control. State v. Spruell, 57 Wn. App. 383, 389, 788 P.2d 21 (1990). No single factor is dispositive in determining dominion and control. State v. Collins, 76 Wn. App. 496, 501, 886 P.2d 243 (1995). Rather, the totality of the circumstances must be considered. Collins, 76 Wn. App. at 501. A rational trier of fact could infer that a defendant had constructive possession of stolen property if the defendant had control over the premises where the property was found. State v. Turner, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). A vehicle is a "premises" for purpose of this inquiry. Turner, 103 Wn. App. at 521.

5

Mere possession of recently stolen property is insufficient to establish that the possessor knew the property was stolen, but possession coupled with slight corroborative evidence is sufficient to prove guilty knowledge. State v. Couet, 71 Wn.2d 773, 775, 430 P.2d 974 (1967); State v. Womble, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999). Corroborative evidence includes damage to the vehicle and the absence of a plausible explanation for legitimate possession. State v. L.A., 82 Wn. App. 275, 276, 918 P.2d 173 (1996); Womble, 93 Wn. App. at 604.

Viewed in the light most favorable to the State, a rational trier of fact could find that Turner possessed the vehicle. Lieutenant Lawler testified that he observed someone driving the car with a female passenger. Three minutes later, Lieutenant Lawler saw the same car parked in front of an apartment complex with the engine running, and watched Turner walk out of the breezeway leading to the apartments carrying a backpack and bottles and place those items in the car behind the driver's seat. Lieutenant Lawler testified that Turner appeared to be about to get into the driver's seat when he arrested him.

Viewing the evidence in the light most favorable to the State, there was also evidence that Turner knew the car was stolen. Lieutenant Lawler and the owner of the car testified that the ignition control switch was disabled, the heater controls were damaged, and the steering column cover was broken off. There was no key and Lieutenant Lawler testified that the screwdriver found on the floor of the car was likely used to start the vehicle.

Turner also argues there was insufficient evidence to convict him of possession of a motor vehicle theft tool because the State did not prove he possessed the

6

screwdriver found inside the stolen vehicle with the intent to use the tool "in the commission of motor vehicle theft." RCW 9A.56.063(1).

RCW 9A.56.063 provides, in pertinent part:

(1) Any person who makes or mends, or causes to be made or mended, uses, or has in his or her possession any motor vehicle theft tool, that is adapted, designed, or commonly used for the commission of motor vehicle related theft, under circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of motor vehicle theft, or knowing that the same is intended to be so used, is guilty of having motor vehicle theft tools.
(2) For the purposes of this section, motor vehicle theft tool includes . . . any other implement shown by facts and circumstances that is intended to be used in the commission of a motor vehicle related theft, or knowing that the same is intended to be so used.

Viewed in the light most favorable to the State, sufficient evidence supports the conclusion that Turner possessed the screwdriver as a motor vehicle theft tool. Lieutenant Lawler testified that the screwdriver was on the front passenger-side floor within reach of someone sitting in the driver's seat. No keys were found in the vehicle, and there was damage to the car's ignition and steering column. Lieutenant Lawler testified that flat-blade screwdrivers like the one he found in the car are commonly used to start stolen vehicles by using the blade to move the mechanism under the steering column.

Offender Score

In the alternative, Turner argues he is entitled to resentencing because the State did not prove his criminal history for purposes of calculating the offender score.

We review a sentencing court's calculation of an offender score de novo. State v. Bergstrom, 162 Wn.2d 87, 92, 169 P.3d 816 (2007). "[I]llegal or erroneous sentences

may be challenged for the first time on appeal." State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

At sentencing, the State bears the burden of proving a defendant's prior criminal history by a preponderance of the evidence. State v. Mendoza, 165 Wn.2d 913, 920, 205 P.3d 113 (2009). Bare assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a prior conviction. State v. Hunley, 175 Wn.2d 901, 910, 287 P.3d 584 (2012). The best evidence of a prior conviction is a certified copy of the judgment. State v. Lopez, 147 Wn.2d 515, 519, 55 P.3d 609 (2002). "This is not to say that a defendant cannot affirmatively acknowledge his criminal history and thereby obviate the need for the State to produce evidence." Mendoza, 165 Wn.2d at 920. A defendant's "mere failure to object to State assertions of criminal history at sentencing does not result in an acknowledgement." Hunley, 175 Wn.2d at 912. But when defense counsel affirmatively acknowledges a defendant's criminal history, the court is entitled to rely on such acknowledgement. Bergstrom, 162 Wn.2d at 97-98.

Turner contends the facts in this case are indistinguishable from Hunley. We disagree. In Hunley, the State presented a written summary of its understanding of the defendant's criminal history. Hunley, 175 Wn.2d at 905. The State did not present any documentation of the alleged offenses. Hunley, 175 Wn.2d at 905. The defendant "neither disputed nor affirmatively agreed with the prosecutor summary." Hunley, 175 Wn.2d at 905. The trial court relied on the summary and on the failure of the defendant to challenge the offender score or sentence at the trial court. Hunley, 175 Wn.2d at 905. On appeal, the Washington State Supreme Court held that "to treat the defendant's failure to object to such assertions or allegations as an acknowledgment of

the criminal history" and "to base a criminal defendant's sentence on the prosecutor's bare assertions or allegations of prior convictions" violates due process. Hunley, 175 Wn.2d at 915.

Here, unlike in Hunley, the court relied on the defense attorney's affirmative acknowledgement of Turner's criminal history. At sentencing, the State presented a "STIPULATION ON PRIOR RECORD AND OFFENDER SCORE" with a list of Turner's prior convictions.[1] But neither Turner nor his attorney signed the stipulation. The prosecutor proposed rescheduling the sentencing to allow the State to present certified copies of the prior convictions:

> I would [point] out that the stipulation of prior offense that I've handed forward is not signed by the defendant or his attorney. [Defense counsel] said that it's her desire not to sign it. I suggested that we set this over so I can bring in the certified copies to the Court. However, we'll defer to the Court with how you want to proceed.

The court then asked the defense attorney whether "there [is] something wrong that you're aware of[ ]on his prior record or the offender score?" In response, the attorney stated, "No, not that I'm aware of, Your Honor." The attorney also told the court, "We're waiving any right to appeal it if it's wrong." The court ruled that it was "going to accept the stipulation. We don't actually have a stipulation, but I'm going to accept the prior record and offender score."

The facts in this case are more like Bergstrom. In Bergstrom, the defense attorney agreed to the State's calculation of the offender score and criminal history. Bergstrom, 162 Wn.2d at 90. But the defendant objected, arguing that some of his crimes were the same criminal conduct. Bergstrom, 162 Wn.2d at 90-91. The sentencing court addressed Bergstrom's argument and rejected it. Bergstrom, 162

---

[1] Emphasis in original.

9

Wn.2d at 91-92. The Supreme Court held that although the sentencing court was entitled to rely on defense counsel's agreement to the offender score and criminal history, because the court considered and ruled on Bergstrom's pro se argument, the court erred in failing to hold an evidentiary hearing and require the State to produce evidence in support of the offender score. Bergstrom, 162 Wn.2d at 97.

There is no evidence in the record that Turner objected to the State's summary of his criminal history. Because the sentencing court was entitled to rely on the defense attorney's affirmative acknowledgment of Turner's criminal history, we affirm Turner's sentence.

Legal Financial Obligations

Turner also challenges the imposition of the $200 filing fee and the $1,000 in court-appointed attorney fees and defense costs, arguing the record does not support finding that he had the ability to pay.[2]

The $200 filing fee is statutorily mandated under RCW 36.18.020(2)(h) and must be imposed regardless of the defendant's ability to pay. State v. Lundy, 176 Wn. App. 96, 103, 308 P.3d 755 (2013). As to imposition of court-appointed attorney fees and defense costs, the State contends that the issue is not ripe for review because the State has not sought to collect the costs. We agree with the State.

Imposition of court-appointed attorney fees and defense costs is discretionary. RCW 10.01.160(1), (2). If a court imposes discretionary legal financial obligations (LFOs), the court must consider the defendant's present or likely future ability to pay. RCW 10.01.160(3); State v. Curry, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992). The

---

[2] Turner does not challenge the imposition of the mandatory $500 crime victim fee or the mandatory $100 DNA (deoxyribonucleic acid) database fee.

10

defendant may petition the court at any time for remission or modification of the payments on the basis of manifest hardship. RCW 10.01.160(4); State v. Baldwin, 63 Wn. App. 303, 310-11, 818 P.2d 1116 (1991). "Because this determination is clearly somewhat 'speculative,' the time to examine a defendant's ability to pay is when the government seeks to collect the obligation." State v. Smits, 152 Wn. App. 514, 523-24, 216 P.3d 1097 (2009). Nothing in the record reflects that the State has attempted to collect LFOs from Turner or expects Turner to begin repayment of his obligations. Turner may challenge the trial court's imposition of LFOs when the government seeks to collect them.

    We affirm.

WE CONCUR: