IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| STATE OF WASHINGTON, | ) | |
| | ) | No. 30716-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CELERINO MOJICA-PULIDO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Celerino Mojica-Pulido Jr. challenges his convictions for

possession of methamphetamine and first degree unlawful possession of a weapon,

arguing that the search warrant did not adequately tie his criminal activities to his

residence. As the warrant provided probable cause for the search, we affirm the

convictions.

FACTS

Mr. Mojica-Pulido was charged after officers serving a search warrant found

packages of methamphetamine and .380 caliber ammunition in a safe in his house that he

told police belonged to him and a .380 caliber gun in the detached garage. The primary

primary basis for the search warrant had been two controlled buys of methamphetamine from Mr. Mojica-Pulido in the garage.

He moved to suppress, arguing that officers did not follow the knock and announce rule when serving the search warrant. The trial court denied the motion, finding that the defense evidence was not credible. The case proceeded to jury trial, with convictions for the offenses noted. The trial court denied a motion to set aside the judgment on the firearm offense, concluding that there was sufficient evidence of dominion and control to support the verdict.

After receiving a standard range offense, Mr. Mojica-Pulido timely appealed to this court.

## ANALYSIS

This appeal presents two issues. Did the search warrant affidavit provide probable cause to search the house and was the evidence sufficient to establish the defendant's dominion and control over the garage where the gun was found? We answer "yes" to each question and address them in the order presented.

*Search of the House*

Mr. Mojica-Pulido first argues that the search warrant did not provide probable cause to believe that any evidence would be found in the house because that location was not tied to his drug-dealing. His initial problem is that he did not present this argument to the trial

2

court.[1] Although we have authority pursuant to RAP 2.5(a)(3) to consider manifest constitutional error for the first time on appeal, there must still be an adequate record to consider the claim. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

The record is marginal in terms of our ability to consider this argument, but in light of the common facts acknowledged by the parties it appears that we can review the claim. The garage was variously described as being 30 to 75 feet from the house. It did not have a separate address or otherwise appear to be an independent piece of property. The search warrant affidavit indicated that the garage was not converted into a separate apartment with its own plumbing or sewage, but was dependent on the nearby house for those features. Papers belonging to the defendant, including a traffic citation, were found in the garage. The trial court's findings in support of its CrR 3.6 ruling also noted that a fence enclosed the entire property that included the single family dwelling and the garage. From these parts of the record, we conclude that the detached garage was part of the same property as the house, was in close proximity to the house, and was not itself a separate residence.

Mr. Mojica-Pulido argues that there was no nexus between the garage and the house, analogizing to *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). *Thein* held that the State cannot establish a nexus between the items to be seized and the place

---

[1] Although the State briefed the issue in the trial court, we cannot find any indication in this record that the defense ever raised or argued the point. Certainly the court's CrR 3.6 findings do not address it.

to be searched simply because the suspect resides at the place to be searched. *Thein*,

138 Wn.2d at 148-49. Generalized statements of common behavior of drug dealers

cannot be substituted for actual information tying the place to be searched with the items

that are sought. *Id.* at 147-49. However, *Thein* does not prohibit reasonable inferences

concerning where evidence of a crime may be found. *Id.* at 149.

The primary difference here is that the criminal behavior occurred on the same

piece of property that was to be searched, while the drug sales at issue in *Thein* occurred

far off the premises. The trial court here expressly found that the house and garage were

on the same plot of land surrounded by a common fence. The affidavit expressly

indicated that the garage was not an independent living location. It was thus reasonable

for the issuing magistrate to conclude that the garage was dependent upon the house and

therefore infer that additional drugs and sales records might be found in the house.

We recently reached a similar conclusion in *State v. Davis*, No. 31052-3-III,

2014 WL 3778165 (Wash. Ct. App. July 31, 2014). There a search warrant, based on the

observation of marijuana growing in a greenhouse, authorized the search of the nearby

house. This court concluded that it was reasonable to infer that the greenhouse operation

would be supported by the residence on the property and, therefore, evidence of criminal

activity was likely to also be found in the house.

Accordingly, we conclude that to the extent the issue is even reviewable at all, the

record here supports the magistrate's decision to issue a search warrant for both the

detached garage and the nearby residence. There was a sufficient nexus to justify the search of the home.

*Sufficiency of Evidence of Firearm Possession*

When officers served the search warrant, they found Mr. Mojica-Pulido and his father and brother in the house, but no one was in the garage. He therefore argues that the evidence was insufficient to support the determination that he possessed the firearm discovered in the garage. Properly viewed, the evidence supported the jury's determination.

Evidentiary sufficiency challenges are reviewed to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

A person possesses a firearm if it is in his or her custody or control. *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). Possession is either actual or constructive. *State v. Turner*, 103 Wn. App. 515, 520-21, 13 P.3d 234 (2000). Constructive possession of a firearm exists when a person exercises "dominion and

5

control over it or over the premises where the firearm was found." *Id.* at 521. A momentary handling is insufficient to establish possession. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

As Mr. Mojica-Pulido did not have the gun on him at the time of the search, the State necessarily had to rely upon a constructive possession theory. He argues that he was in no position to reduce the gun to his immediate possession when the police arrested him in his home. He also contends that the evidence did not show that he controlled the garage. These arguments are not persuasive.

Whether or not a person can reduce an item to his immediate possession is only one factor in determining the existence of dominion and control. *Turner*, 103 Wn. App. 521; *Echeverria*, 85 Wn. App. at 783. The fact that Mr. Mojica-Pulido was found apart from the gun is not a bar to applying the constructive possession doctrine. Instead, it is the reason that the doctrine exists. A gun does not become non-owned or unpossessed simply because the owner/possessor is away from it. Similarly here, the absence of a person with immediate control over the gun is but a single factor to consider. It is not a dispositive fact in Mr. Mojica-Pulido's favor.

Typically, control over the premises is evidence of dominion and control over property found there. *E.g., State v. Summers*, 107 Wn. App. 373, 389, 28 P.3d 70 (2001); *Turner*, 103 Wn. App. at 521 (vehicle was "premises"); *Echeverria*, 85 Wn. App. at 783 (driver of vehicle). Exclusive access or time of possession is irrelevant for purposes of

No. 30716-6-III
*State v. Mojica-Pulido*

proving unlawful possession. *See Echeverria*, 85 Wn. App. at 783. The evidence here showed that Mr. Mojica-Pulido had paperwork in the garage. He owned a safe that contained ammunition of the same caliber as the gun found in the garage. Both of these facts suggested that he exercised some control over both the garage and the gun. Those facts allowed the jury to conclude that he had dominion and control over the garage and its contents. *Cf. Summers* (defendant who lived in basement possessed gun found there even though he was not in building when it was searched).

Accordingly, the evidence was sufficient to support the jury's verdict. The convictions therefore are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

7