## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48125-1-II |
| Respondent, | |
| v. | |
| M.B., Jr., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — M.B.,[1] a 17-year-old minor child, hit his mother's boyfriend twice in the head after a heated confrontation took place in the minor's small bedroom. M.B. was charged with fourth degree assault. At the adjudicatory hearing, M.B. argued that he had hit his mother's boyfriend in self-defense. The juvenile court concluded that there was insufficient evidence to allow M.B. to raise the self-defense claim, and that M.B. was guilty of fourth degree assault.

On appeal, M.B. argues the juvenile court erred in concluding that there was insufficient evidence for M.B. to raise the claim of self-defense. We agree. Accordingly, we reverse the conviction and remand for further proceedings.

---

[1] In accord with RAP 3.4, and to protect the confidentiality of the juvenile party, initials will be used in the case caption and throughout the opinion.

FACTS

A.    ADJUDICATORY HEARING

In the early summer of 2015, M.B. moved back in with his mother, Kelly Borroz, and his mother's boyfriend of more than nine years, Dan Bowers. M.B. and Bowers had no relationship, Bowers tried to "stay out of anything to do with parenting," and Bowers's "only contact with [M.B.] [wa]s typically correction." Verbatim Report of Proceedings (VRP) at 9. Bowers described M.B. as being "Disrespectful. Dismissive. Defiant." towards Bowers. VRP at 9. Ms. Borroz stated that M.B. and Bowers did not get along. Everyone agreed that one of the rules when M.B. moved back in was that he was not to have a girl in his room.

On July 27, 2015, at about 4:30 A.M., Bowers opened the door to M.B.'s room to find M.B. alone with a girl. M.B. was 17 years old.

Bowers was "shocked and pissed off." VRP at 12. Bowers testified that he told M.B. to "get that little bitch out of my house right now." VRP at 13. Bowers then went and woke Ms. Borroz to have her deal with the situation. Ms. Borroz went to M.B.'s room and Bowers went downstairs to "collect [his] thoughts." VRP at 13.

Ms. Borroz testified that when she went into M.B.'s room he "was laying there like he was half asleep, and I was just trying to get him up to deal with this." VRP at 25. Ms. Borroz told M.B. that he needed to get up and take the girl home.

Bowers "felt [Ms. Borroz] was dealing with [M.B.] in once again a very kid-glove manner," so he "came up behind her" as she was standing in the doorway to M.B.'s room and said, "I told you he's a liar, and I told you that he was sneaky." VRP at 13. To this, M.B. responded, "[D]o you want to f***ing fight me?" VRP at 14. M.B. testified that he never said that, and Ms.

Borroz testified that she could not remember if anything was said. M.B. also testified that he yelled, "[F]*** you m***f***" back at Bowers when Bowers came up behind Ms. Borroz. VRP at 59.

Bowers started to go around Ms. Borroz, but never made it around before M.B. hit him twice in the head. In attempting to get around Ms. Borroz, his intention was to

> stand chest to chest, feeling like it was my last opportunity as a parent to regain control of my household. I was going to stand chest to chest as a bluff and say, what are you going to do about it? Because after this, it's only physical or getting shot, so I've got nothing left to lose.

VRP at 14-15.

There was three to four feet between the bed where M.B. was and the doorway. Both M.B. and Ms. Borroz testified that M.B.'s room is small.

Ms. Borroz testified that she was standing in the doorway to M.B.'s room and remembered Bowers had passed her to enter the room. Bowers

> was back and forth screaming and hollering . . . in the hall or whatever, but he just came passed [sic] me, and the next thing I knew the two of them were together, and I'm screaming trying to break it up, telling him to knock it off, and then [Bowers] fell toward the bed.

VRP at 25. She never saw them touch each other, but stated that "they were so close that it—I would have been surprised if they weren't touching each other." VRP at 30. She could not remember if she told the sheriff's deputy that M.B. and Bowers were pushing each other. At the adjudicatory hearing, Bowers denied telling the sheriff's deputy that he and M.B. had been pushing.

M.B. testified that Ms. Borroz was in the doorway to his room when Bowers passed by her into M.B.'s room cursing at M.B. Bowers then pushed M.B., M.B. hit Bowers twice, Bowers fell down, and then Bowers left the room cursing at M.B. and telling M.B. that M.B. was going to jail.

M.B. said he felt angry and agitated. M.B. also felt threatened by Bowers as Bowers was 30 years older and had put hands on M.B. before. M.B. testified that he does not know if someone is bluffing, and that even if they were bluffing, that person is still threatening him. He felt he had to use some kind of force to get away from Bowers.

Bowers is five feet six and a half inches tall. M.B. is five feet eight inches tall and weighs 115 pounds.

Bowers testified that after he was hit he "stooped over" and "knew . . . I needed to get out of that room. So I immediately just turned and walked out." VRP at 15. Bowers went downstairs and called the police.

M.B. took the girl home and returned shortly after the sheriff's deputy arrived. The sheriff's deputy said that M.B. was angry and agitated when he returned home. M.B. was cursing at Bowers while the sheriff's deputy was trying to calm M.B. down. M.B. told the sheriff's deputy that he was "not going to put up with it anymore," that he was "going to defend himself," and that he hit Bowers. VRP at 38.

The sheriff's deputy testified that Ms. Borroz told him that M.B. and Bowers were "kind of pushing each other," or in a "tussle." VRP at 43. The sheriff's deputy also testified that Bowers told him that M.B. and Bowers "got into a tussle, and then [M.B.] hit [Bowers] on the side of his head." VRP at 44-45.

B.      PROCEDURAL FACTS

After the State rested its case, M.B. moved to dismiss, arguing that the State had not proven

beyond a reasonable doubt that M.B. had not acted in self-defense.  The juvenile court denied the

motion, reasoning that at this point, M.B. had not put forth any evidence to satisfy his initial burden

to "prove that self-defense was necessary in order to avoid being injured."  VRP at 47.

After the State and defense finished their closing remarks, the juvenile court made its oral

findings and conclusions.  The juvenile court first found that M.B. intentionally assaulted Bowers.

Then the juvenile court considered whether M.B. had done so in self-defense.  In making this

determination, the juvenile court said:

> The jury instruction on use of force or self-defense is, "The use of force
> upon or toward the person of another is lawful when used by a person who
> reasonably believes that he is about to be injured by someone and when the force
> is not more than is necessary.  You cannot use force in retaliation, the force must
> be necessary.  And the real inquiry is, what would a reasonable person do in the
> same circumstances that you were in?"
>
> It has to be an objective fear.  That's where I get hung up on the testimony
> that I've heard here today—is that you have to have personally—it's not a
> subjective fear, whether [defense counsel] or [the prosecutor] or myself would be
> in fear of Mr. Bowers.
>
> The question is, were you in fear of Mr. Bowers?  And based on the
> testimony that I've heard here today, you were not then and you are not now, and
> you may—since you've been a small child—not ever been afraid of Mr. Bowers.
> If you had that fear, you wouldn't have made the comments that you made to him,
> not necessarily inciting the fight, but showing that you didn't have any objective
> fear of Mr. Bowers.
>
> Mr. Bowers, based on the testimony of both—Mr. Bowers and of Ms.
> Borroz never drew a fist towards you, never indicated by words or deed that he was
> going to injure you in any way.  The only testimony that we had was he was going
> to get in your face—chest to chest, I think, is what he testified to.  And there's no
> question that you struck him out of anger and for punishment for being disrespectful
> to you and the girl that was in the room to [sic] you.

5

So based on those facts and the lack of an objective fear on your part, I find that self-defense is not available to you. So you're guilty of the charge of fourth degree assault.

VRP at 73-74.

Written findings of fact and conclusions of law were also filed. The findings of fact and conclusions of law are reproduced below:

FINDINGS OF FACT

1. On July 27, 2015, [M.B.], hereafter "the respondent," was in his room with a female around 4:30 am. This was at 4013 NE 83rd Way, Vancouver, WA, in Clark County, Washington.

2. The respondent and the female were discovered by the respondent's mother's boyfriend, Daniel Bowers. Mr. Bowers was angry with this discovery.

3. Mr. Bowers used inappropriate language when he told the respondent to remove the girl from the house.

4. A verbal confrontation ensued. The respondent verbalized disrespectful language toward Mr. Bowers before anything physical occurred.

5. Mr. Bowers, based on his testimony and testimony of Ms. Kelly Borroz, never raised a fist to the respondent. Also, through testimony, Mr. Bowers never indicated by word or deed that he was going to injure the respondent in any way. He did testify that he wanted to get "chest to chest" with the respondent.

6. The respondent testified that he hit Mr. Bowers twice in the head.

7. The respondent hit Mr. Bowers out of anger and as punishment for being disrespectful to him and the female in the room.

8. After the physical contact, the respondent yelled disparaging comments toward Mr. Bowers in front of the police officer; showing no objective manifestation of fear of Mr. Bowers.

9. The statements by the respondent to the police officer were made before taken [sic] into custody and were voluntary.

10. The respondent showed no objective, reasonable fear of being injured by Mr. Bowers before the physical assault or after.

11. After the respondent's initial punches to Mr. Bowers, there was no further physical interaction between Mr. Bowers and the respondent that night.

Based on the foregoing Findings of Fact, the court makes the following:

CONCLUSIONS OF LAW

1. The court has jurisdiction of the respondent, [M.B.], and of the subject matter.

2. On July 27, 2015, in Clark County, Washington, the respondent, [M.B.], did intentionally assault another person to wit: Daniel Bowers.

3. The respondent did not have a reasonable fear of Mr. Bowers.

4. Based on the facts in evidence and finding that the respondent lacked objective fear, there is insufficient evidence for the respondent to raise the claim of self-defense.

5. The respondent's statements surrounding the assault were admissible.

6. The State has proven beyond a reasonable doubt that the respondent is guilty of the crime charged: Assault in the Fourth Degree.

7. Judgment and Disposition should be entered accordingly.

Clerk's Papers (CP) at 7-9.

The juvenile court found M.B. indigent.  M.B. appeals.

7

ANALYSIS

M.B. argues that the juvenile court erred in concluding that there was insufficient evidence for him to raise the claim of self-defense. We hold that the juvenile court erred in not allowing M.B. to raise the claim of self-defense and that M.B. was prejudiced by the error.

A.     LEGAL PRINCIPLES

Following a juvenile adjudication hearing, "the [juvenile] court is required to state its findings, including the evidence relied upon, and enter its decision, JuCR 7.11(c), and to reduce them to writing if the case is appealed, JuCR 7.11(d)." *State v. Echeverria*, 85 Wn. App. 777, 782-83, 934 P.2d 1214 (1997). Unchallenged findings of fact are verities on appeal. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Findings of fact must support conclusions of law. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

We review findings of fact in a juvenile matter for substantial evidence. *Id.* at 97. "Substantial evidence" is "'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *Levy*, 156 Wn.2d at 733 (quoting *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). A juvenile respondent challenging the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that may be drawn therefrom. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Under RCW 9A.36.041(1), "[a] person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." Fourth degree assault includes the intentional harmful or offensive

touching of another person regardless of whether it results in physical injury. *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007).

Self-defense negates the intent element of an assault, making self-defense an affirmative defense to a charge of assault. *State v. McCullum*, 98 Wn.2d 484, 495, 656 P.2d 1064 (1983); RCW 9A.16.020.[2] To raise a claim of self-defense, the juvenile respondent must first offer credible evidence tending to prove self-defense. *State v. Graves*, 97 Wn. App. 55, 61, 982 P.2d 627 (1999). "'[T]here need only be some evidence, admitted in the case from whatever source to raise the issue of self-defense.'" *State v. Summers*, 120 Wn.2d 801, 819, 846 P.2d 490 (1993) (quoting *McCullum*, 98 Wn.2d at 500). The juvenile respondent must offer evidence showing that he or she had a good faith belief that he is about to be injured[3] and that the belief was objectively reasonable. *Graves*, 97 Wn. App. at 62.

As such, the determination of whether a juvenile respondent is allowed to raise a self-defense claim incorporates both subjective and objective elements. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). In the subjective analysis, the juvenile court must place itself in

---

[2] In relevant part, RCW 9A.16.020 states,

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
> . . . .
>
>    (3) Whenever used by a party about to be injured, . . . in preventing or attempting to prevent an offense against his or her person, . . . in case the force is not more than is necessary.

[3] The degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the juvenile respondent. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997).

the juvenile respondent's shoes and view the juvenile respondent's acts in light of all the facts and circumstances the juvenile respondent knew when the act occurred. *Id*. In the objective analysis, the juvenile court must determine what a reasonable person would have done if placed in the juvenile defendant's situation. *Id*. Once the juvenile respondent provides evidence of self-defense, the burden shifts to the State to prove the absence of self-defense beyond a reasonable doubt. *Id*. at 473; *Graves*, 97 Wn. App. at 61-62.

The standard of review for a juvenile court refusing to consider a claim of self-defense depends on why the juvenile court refused to consider the claim. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). If the refusal to consider a self-defense claim stems from a finding that no evidence supporting the juvenile respondent's subjective belief of imminent danger of injury, an issue of fact, the standard of review is abuse of discretion. *Id*. The refusal to consider a claim of self-defense because no reasonable person in the juvenile respondent's shoes would have acted as the juvenile respondent did is an issue of law that this court reviews de novo. *Id*.

B.       EVIDENCE SUPPORTED ABILITY TO RAISE SELF-DEFENSE

Here, the juvenile court concluded that "there is insufficient evidence for [M.B.] to raise the claim of self-defense." CP at 9. The juvenile court reasoned that because M.B. had not presented any evidence that M.B. had a valid objective fear of Bowers, "self-defense is not available" to M.B. and he was not allowed "to raise the claim of self-defense." VRP at 74; CP at 9. We hold that the findings of fact and substantial evidence in the record do not support the juvenile court's conclusion.

10

1.      Findings of Fact and Substantial Evidence

M.B. argues that the juvenile court erred in entering findings of fact 10.[4] We agree.

Finding of fact 10 states that "[M.B.] showed no objective, reasonable fear of being injured by Mr. Bowers before the physical assault or after."[5] CP at 8. Whether M.B. *showed* objective *fear* is not the proper inquiry in considering the objective element of a claim for self-defense. *See Walden*, 131 Wn.2d at 474 (holding that a claim for self-defense incorporates subjective and objective elements). The proper inquiry is whether M.B.'s subjective belief was objectively reasonable. *Graves*, 97 Wn. App. at 62.

Here, and applying the facts to the proper inquiry, substantial evidence supports that it would be objectively reasonable for someone in M.B.'s shoes to believe he or she was about to be injured. Everyone agreed the verbal confrontation between M.B. and Bowers was heated and loud. Ms. Borroz testified that M.B. and Bowers "were so close that it—I would have been surprised if they weren't touching each other." VRP at 30. Both Ms. Borroz and Bowers told the sheriff's deputy that M.B. and Bowers had been in a "tussle" before M.B. hit Bowers. VRP at 43, 45. Finally, and possibly the best evidence that fear of injury was objectively reasonable, was the

---

[4] M.B. assigned error to the juvenile court's findings of fact 4, 5, 7, and 10, but he does not provide argument related to findings of fact 4, 5, or 7. Rather, M.B. just argues that substantial evidence shows that M.B. subjectively believed he was at risk of injury by Bowers and that M.B.'s belief was objectively reasonable, which is finding of fact 10. Thus, M.B.'s challenge to findings of fact 4, 5, and 7 are waived. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[5] That M.B. showed no objective manifestation of fear towards Bowers after the assault is irrelevant to the pertinent inquiry into what M.B. subjectively thought, and what a similarly situated reasonable person would have done, at the time of the confrontation in M.B.'s bedroom. *Walden*, 131 Wn.2d at 474.

testimony of Bowers, who, despite knowing his own actions to be a bluff, believed that standing chest to chest with M.B. was the last step before the situation would escalate into a physical altercation or someone getting shot. Thus, we hold that the juvenile court erred in entering finding of fact 10 because substantial evidence supports that it would be objectively reasonable for someone in M.B.'s shoes to believe he or she was about to be injured.

2.      Conclusions of Law Flowing from Findings of Fact

M.B. argues that the juvenile court erred in concluding there was insufficient evidence for M.B. to raise the claim of self-defense.[6] We agree.

As stated above, in order to be entitled to raise a claim of self-defense, the juvenile court was required to apply a mixed subjective and objective analysis. *See Walden*, 131 Wn.2d at 474 (holding that a claim for self-defense incorporates subjective and objective elements); *see also Read*, 147 Wn.2d at 242-43 (holding the same). Here, the juvenile court determined that M.B. "lacked objective fear." CP at 9. And, as noted above, whether M.B. "lacked objective fear" is not the proper inquiry. CP at 9; *See Graves*, 97 Wn. App. at 62. Thus, we hold that the juvenile court's finding and conclusion that M.B. lacked an objective fear of Bowers, does not support the legal conclusion that there was insufficient evidence to raise a self-defense claim. Further, as explained above, substantial evidence in the record would not support a conclusion that a belief that M.B. was about to be injured was not objectively reasonable, even if the juvenile court had

---

[6] M.B. assigns error to conclusions of law 3, 4, 6, and 7, but he does not provide argument to each conclusion of law challenged. Rather, M.B. just argues that the juvenile court erred in concluding there was insufficient evidence for M.B. to raise the claim of self-defense, which is in conclusion of law 4. Therefore, M.B.'s challenge to conclusions of law 3, 6, and 7 are waived. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

made such a finding. Therefore, we hold the juvenile court's conclusion that M.B. lacked objective fear of Bowers is not dispositive to the issue of self-defense and does not flow from findings of fact that are supported by substantial evidence. *B.J.S.*, 140 Wn. App. at 97 (holding that findings of fact must support the juvenile court's conclusions of law).

C.      PREJUDICE

A court's refusal to allow the defense's theory of the case to proceed, when it is supported by evidence, is reversible error when it prejudices the defendant. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). The State argues that the juvenile court "effectively allowed M.B.'s claim of self-defense to be raised and then rejected it as the trier of fact." Br. of Resp't at 8. The State's argument fails because had the juvenile court allowed M.B. to raise the claim of self-defense, the burden would have shifted to the State to prove the absence of self-defense beyond a reasonable doubt, and here, the juvenile court did not enter any conclusions of law to that effect. *Walden*, 131 Wn.2d at 473; *Graves*, 97 Wn. App. at 61-62. Instead, the juvenile court concluded that M.B. assaulted Bowers and there was insufficient evidence for M.B. to raise a claim self-defense, so M.B. was guilty of fourth degree assault.

We hold that M.B. was prejudiced by the juvenile court's refusal to allow M.B. to raise the self-defense claim. The juvenile court's guilty verdict was based on M.B. not being allowed to raise a self-defense claim. Had the self-defense claim been allowed, the burden of proof would have shifted to the State and findings of fact and conclusions of law different than those that were

No. 48125-1-II

entered would have been required.  Therefore, we reverse the conviction and remand for further

proceedings.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.