[Nos. 19429-1-I; 19430-5-I.   Division One.   April 17, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEE HAGEN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEE HAGEN, *Defendant*, PEGGY LOU LYNCH, *Appellant*.

*Christine Hassenstab,* for appellant Hagen.

*Dawn Monroe* of *Washington Appellate Defender Association,* for appellant Lynch.

*Norm Maleng, Prosecuting Attorney,* and *Saul Gamoran, Deputy,* for respondent.

GROSSE, A.C.J.—These two separate appeals result from a single jury trial of the codefendants Hagen and Lynch.

Because of the identity of facts and issues, we dispose of both appeals in this opinion.

Michael L. Hagen (Hagen) and his codefendant, Peggy L. Lynch (Lynch), were charged with possession of marijuana with the intent to deliver or manufacture in violation of RCW 69.50.401(a). Hagen was convicted of the charge; Lynch was convicted of the lesser included offense of possession.

In January of 1986, two Kent police officers went to Hagen's home to retrieve a handgun used in a domestic violence dispute. The gun had been left with Hagen but he was not involved in the domestic incident. Hagen opened the door of the house and, after being asked a few questions, told one of the officers that the gun was in the house. The officer asked that he be allowed to enter the home to retrieve the gun rather than having Hagen retrieve it. Both officers testified that Hagen agreed to let them in. Hagen, however, testified that he objected to the entry by the officers, or at least that he was improperly coerced or tricked into allowing them in. One officer testified that as soon as he was in the house he detected the strong and obvious odor of growing marijuana. As he followed Hagen to the room where the gun was being kept he observed marijuana plants and the trappings of a growing operation. He arrested Hagen, advised him of his rights, and asked for permission to search the premises. Hagen denied consent for the search. Accordingly, the officer left Hagen in the company of the other officer while he went to obtain the necessary search warrant.

During the ensuing search over 10 kilograms of plant material were discovered along with growing equipment and other drug paraphernalia. Also discovered during the search were various documents which were admitted at trial to show who owned, resided, or was staying at the house. Some of these items belonged to Lynch. One of the officers testified that Ms. Lynch later told him she had lived at the house "off and on" but that this time she had been there for only 4 days.

After his arrest, and being advised of his rights, Hagen made a written statement at the police station. In the statement Hagen said that although he grew the marijuana the growing operation was originally started to help comfort Lynch's mother who was afflicted with cancer. After her demise it was for his personal use only. He admitted owning the house.

During deliberations the jury sent the following inquiry to the court:

1) Does residency, as opposed to ownership, constitute "dominion and control" over the "substance or the premises"?
2) Does living in a house for four days constitute residency?

The court responded, "Please, reread the instructions."

Later the jury sent a second inquiry which asked for a legal definition of "dominion and control". The trial court determined that a response was appropriate to this inquiry. The State proposed an instruction taken from *United States v. Martorano,* 709 F.2d 863, 869 (3d Cir.), *cert. denied,* 464 U.S. 993 (1983), which stated: "dominion and control [is] the ability to reduce an object to actual possession". Both defense counsel objected to the State's proposal and Lynch's counsel proposed a different instruction which the trial court refused. Both defense counsel then urged the court to give no instruction at all rather than the State's proposed instruction. The court noted the exception, but read and submitted the State's instruction to the jury.

These appeals present two principal issues. First, whether the initial entry by the police into Hagen's home was illegal and the evidence obtained inadmissible. Second, whether the supplemental instruction on dominion and control was a correct statement of the law.

Only Hagen argues the first issue. He claims that the findings of fact made by the court at the CrR 3.6 pretrial hearing are not supported by the evidence; that he did not consent to the officers' entry; and that the resulting warrantless search was per se unreasonable. The question to be answered here is whether the trial court erred in finding that Hagen gave his consent for the officers to enter his

residence. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).

■ The role of the appellate court is to determine whether substantial evidence supports the findings of the trial court and whether those findings support the conclusions of law and the judgment. *State v. Hashman,* 46 Wn. App. 211, 217, 729 P.2d 651 (1986), *review denied,* 108 Wn.2d 1021 (1987). *See also Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 397, 722 P.2d 787 (1986). "Substantial evidence is evidence of sufficient quantum to persuade a fair–minded person of the truth of the declared premise." *Hashman,* 46 Wn. App. at 217–18 (citing *Group Health,* 106 Wn.2d at 397). The trial court's findings will not be disturbed on appeal if supported by substantial evidence. *Hashman,* 46 Wn. App. at 217.

At the suppression hearing, Hagen testified that he said to the officers, "I am going to *walk you in there* and get the gun." (Italics ours.) This is sufficient evidence to support the findings and conclusions that Hagen consented to having the police officers enter his home. There was no error in denying the motion to suppress.

Resolution of the second issue is more problematic. Both appellants claim that the supplemental instruction defining "dominion and control" was not a correct statement of Washington law. In the factual context of this case, we agree.

Although the trial court was not required to define the terms "dominion and control", *State v. Amezola,* 49 Wn. App. 78, 87–88, 741 P.2d 1024 (1987), once the trial court undertook to do so it was required to correctly state the law. *State v. Mark,* 94 Wn.2d 520, 526, 618 P.2d 73 (1980).

■ In Washington, constructive possession is established when the person charged has dominion and control over either the drug, *State v. Callahan,* 77 Wn.2d 27, 29, 459 P.2d 400 (1969), or the premises where the drug is found, *State v. Davis,* 16 Wn. App. 657, 659, 558 P.2d 263 (1977). *See also Amezola,* 49 Wn. App. at 86; *State v. Hustad,* 36 Wn. App. 42, 49, 671 P.2d 793 (1983). Exclusive

control is not necessary to establish constructive possession, *State v. Wheatley,* 10 Wn. App. 777, 779, 519 P.2d 1001 (1974), but mere proximity to the drugs is not enough to establish constructive possession. The *Amezola* court cited *State v. Partin,* 88 Wn.2d 899, 906, 567 P.2d 1136 (1977), which stated:

> [W]e will look at the *totality of the situation* to determine if there is substantial evidence tending to establish circumstances from which the jury can reasonably infer that the defendant had dominion and control of the drugs and thus was in constructive possession of them.

*Amezola,* 49 Wn. App. at 86.

Initially, the jury was instructed on possession as follows:

> Possession means knowingly having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance or the premises upon which the substance was found. Dominion and control does not have to be exclusive to establish constructive possession.

This was a correct statement of the law. The disputed "dominion and control" supplemental instruction was not. While it is true that the ability to reduce an object to actual possession may be one aspect of dominion and control, there are other aspects such as physical proximity which must be included in a definitional instruction. Taking the instructions on possession and dominion and control together, the jury could easily have concluded that mere proximity to the drugs was sufficient to establish constructive possession.

The use of an improper instruction in a criminal case is presumed to be prejudicial. *State v. Hicks,* 102 Wn.2d 182, 187, 683 P.2d 186 (1984). In *Hicks* the court said that failure to give an instruction beneficial to a defendant is presumed to be prejudicial. However, the presumption of prejudice arising from an erroneous instruction in a criminal prosecution may be overcome if this court determines that it did not affect the jury's consideration of

the charge, *State v. Hoffman,* 35 Wn. App. 13, 664 P.2d 1259 (1983), or if this court determines that it affirmatively appears the error was harmless. *State v. Rice,* 102 Wn.2d 120, 123, 683 P.2d 199 (1984); *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). An instructional error is harmless if it is trivial, formal, or merely academic, was not prejudicial to the substantial rights of the party assigning error, and in no way affected the final outcome of the case. *State v. Brown,* 45 Wn. App. 571, 576, 726 P.2d 60 (1986).

In the case at bar, as to Hagen, we find the error to be harmless. The evidence showed Hagen to be the owner of the house. His oral and written statements admitted that he grew the marijuana, at least for his own use. Dominion and control were not at issue in his case. We therefore affirm Hagen's conviction.

The harmless error analysis of the case against Ms. Lynch is different from that of Hagen. The inquiries made by the jury after it retired to deliberate concerned whether Lynch was a "resident" after living in a place for 4 days, whether mere residency as opposed to ownership constituted "dominion and control" over the substance or the premises, and, finally, what the legal definition of "dominion and control" was. There was no actual proof of Lynch's ownership interest in the premises. Although there was evidence in Hagen's statement that he and Lynch had lived together for 2½ years, that she received some mail at the house, and further that she admitted she lived in the premises "off and on", there was also evidence showing she had been removed from the original purchase contract, that she had a different address, and that her residence in Hagen's house was only temporary.

Therefore, in the case of Lynch the instructional error was not trivial or academic and probably affected the jury's consideration of the charge. We must reverse her conviction.

The judgment and sentence is affirmed with respect to appellant Hagen. We reverse as to appellant Lynch.

SCHOLFIELD and WINSOR, JJ., concur.