FILED
JUNE 11, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31440-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANE RICHARD BUCKMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Shane Buckman appeals from his conviction for possessing a

dangerous weapon. He contends the trial court should have granted his motion to

suppress incriminating statements. He also challenges the sufficiency of evidence. We

affirm his conviction.

FACTS

On the night of February 3, 2012, a Yakima Walmart store manager reported to

the store's loss prevention officer that a customer carried brass knuckles. Kyle Levi, the

loss prevention officer, called police and reported that a young man in the store was displaying brass knuckles to other customers. Levi described the subject as a male "wearing brass knuckles, a black flat billed NY Yankees hat, a black t-shirt and blue jeans." Clerk's Papers (CP) at 4. The brass-knuckled male exited Walmart and entered a black Acura Legend, which left the Walmart parking lot heading east.

Yakima Police searched for a black Acura Legend, which Officer Tory Jason Adams located and stopped. Officer Adams spoke with the vehicle's driver and saw Shane Buckman seated in the Acura's backseat. Buckman wore a flat-billed cap, a black shirt, and blue jeans, and held sunglasses. Shane Buckman was fifteen years old.

Officer Jeffrey Miller arrived to assist Tory Adams. While holding a flashlight, Officer Miller rapped on the Acura's rear passenger window, which separated him and Shane Buckman. Miller motioned for Buckman to roll down the window. Buckman complied. Officer Miller asked Buckman for identification and then asked Buckman twice about the location of the brass knuckles. Buckman pointed to the vehicle's map pocket in front of him and said, "they're in there." Report of Proceedings (RP) (Jan. 25, 2013) at 44. Officer Miller asked Buckman to hand him the knuckles and Buckman complied. Buckman removed the knuckles from the pocket and handed them to Officer Miller through the vehicle's open window. Buckman told Miller that the knuckles were actually a belt buckle.

The trial court later observed:

2

The device also had a small hook between the second and third finger holes that might fit into a hole on a belt worn about the waist, suggesting it could be used as a belt buckle. However the device was not attached to a belt and a belt was not produced by [Shane Buckman] while in the automobile or at time of trial.

CP at 116. Officer Jeffrey Miller laid the knuckles on the Acura's trunk. Officer Miller had not yet warned Shane Buckman of the latter's *Miranda* rights. Miller arrested Buckman for possession of a dangerous weapon.

## PROCEDURE

The State of Washington charged Shane Buckman with possession of a dangerous weapon in violation of RCW 9.41.250. Before trial, Buckman moved to suppress, under CrR 3.5, all statements made by Buckman to Officer Jeffrey Miller because Miller did not advise Buckman of his *Miranda* warnings until "after completing a custodial interrogation." CP at 9. Buckman argued that his comments, while inside the car, about the knuckles and belt, occurred while in custody.

Yakima Police Officers Jeffrey Miller and Tory Adams testified at the suppression hearing. After hearing testimony, the trial court denied the suppression motion. The juvenile court later found Shane Buckman guilty of possession of a dangerous weapon.

## LAW AND ANALYSIS

On appeal, Shane Buckman contends: (1) the trial court erred when it denied his motion to suppress testimonial statements and actions given the lack of *Miranda* warnings, and (2) the facts of this case are insufficient to support Buckman's conviction

3

on the basis of constructive possession. We reject both arguments and affirm the conviction.

Motion to Suppress

Shane Buckman contends that his statements and actions during the traffic stop are inadmissible because they were obtained as a result of a custodial interrogation without *Miranda* warnings. These actions and statements include: Buckman pointing to the car's map pocket; Buckman telling Officer Miller, "they're in there"; Buckman handing the knuckles to Miller; and Buckman's comment that the knuckles were part of a belt buckle. RP (Jan. 25, 2013) at 44.

Shane Buckman does not challenge any of the trial court's findings of fact. The rule in Washington is that unchallenged findings entered after a suppression motion hearing are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003); *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Nevertheless, the ultimate determination of whether the accused underwent a custodial interrogation is one of law and is reviewed de novo. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). This court reviews "a trial court's custodial determination de novo." *Lorenz*, 152 Wn.2d at 36. We take these principles of review to mean we accept the trial court's findings of the bare facts uninfected by any inferences and unencumbered by legal significance.

The United States Supreme Court formulated *Miranda* warnings to protect a defendant's constitutional right not to make incriminating confessions or admissions to

4

police while in the coercive environment of police custody. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary and are thus inadmissible. *Heritage*, 152 Wn.2d at 214. For statements to be later admissible, *Miranda* warnings must precede the statements when a state agent engages the suspect in a "custodial interrogation." *Heritage*, 152 Wn.2d at 214.

Shane Buckman argues he underwent "interrogation" because Officer Jeffrey Miller should have known that his questions and demands of Buckman were reasonably likely to elicit an incriminating response. The State does not refute this argument. The law confirms the conclusion that Officer Miller's questioning involved an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *State v. Pejsa*, 75 Wn. App. 139, 147, 876 P.2d 963 (1994). The sole issue is whether Shane Buckman was "in custody" when he answered Officer Miller's questions about the knuckles and complied with the officer's request to produce them.

In *Miranda*, the United States Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984), the United States Supreme Court refined the definition of "custody." *Berkemer* set forth an objective test,

5

focusing on "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." *Lorenz*, 152 Wn.2d at 37. Washington has adopted the *Berkemer* test. *Heritage*, 152 Wn.2d at 218.

Yakima police seized the Acura when it stopped the car. A routine traffic stop curtails the freedom of a motorist such that a reasonable person would not feel free to leave the scene. Therefore, a routine traffic stop, like a *Terry* stop, is a seizure for the purposes of the Fourth Amendment. *State v. Heritage*, 152 Wn.2d 210, 218, 95 P.3d 345 (2004) (referring to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Shane Buckman sat in the seized vehicle when he made his statements to Officer Jeffrey Miller. Buckman could not exit the car while Officers Adams and Miller investigated whether someone in the Acura possessed a dangerous weapon.

The *Berkemer* test requires more, however, before a citizen undergoes custody such that an officer must utter the *Miranda* warnings. Washington courts agree that a routine *Terry* stop is not custodial for the purposes of *Miranda*. *Heritage*, 152 Wn.2d at 218 (citing *State v. Hilliard*, 89 Wn.2d 430, 432, 435-36, 573 P.2d 22 (1977)). An officer making a *Terry* stop may ask a moderate number of questions to determine the identity of a suspect and to confirm or dispel the officer's suspicions without rendering the suspect "in custody" for the purposes of *Miranda*. *Heritage*, 152 Wn.2d at 219 (citing *Berkemer*, 468 U.S. at 439-40). Mere suspicion before the facts are reasonably developed is not

6

enough to transubstantiate the questioning into a custodial interrogation. *State v. Hilliard*, 89 Wn.2d at 436.

When arguing he underwent custodial interrogation, Shane Buckman emphasizes the following facts: police stopped the black Acura with lights blazing; the presence of a second patrol car and second officer; Officer Miller required Buckman to roll down the window; and both officers wore a uniform and bore arms. Buckman does not explain how these facts differ from a routine traffic stop, and experience would suggest they do not. Officer Miller limited his questions to the impetus for the investigative stop, that being the possession of a dangerous weapon.

A relevant decision is *Heinemann v. Whitman County*, 105 Wn.2d 796, 718 P.2d 789 (1986). A Whitman County deputy sheriff followed a car driven by Paul Heinemann, who the deputy suspected was intoxicated. When Heinemann drove the car into his residence's driveway, the deputy turned on his emergency light and pulled into the driveway behind Heinemann's vehicle. The sheriff deputy asked Heinemann to perform field sobriety tests. Had Heinemann refused to perform the tests, the deputy would have arrested him. Heinemann failed the tests. The sheriff deputy arrested Heinemann and then delivered the *Miranda* warnings. Upon a prosecution for drunk driving, Heinemann moved to suppress evidence of the sobriety tests on the ground he had not yet been read his *Miranda* rights. The Supreme Court affirmed the denial of the motion to suppress. When the deputy asked Heinemann to perform field tests,

Heinemann was not under coercive restraints and thus not in custody.

Shane Buckman notes that he had recently turned fifteen years old, and he argues that we should consider his youth and naivety when assessing whether he was in custody. Buckman cites no authority to support his argument. RAP 10.3(a)(6) directs each party to supply, in his brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187, 194-95 (2012), *review denied*, 176 Wn.2d 1021, 297 P.3d 708 (2013). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). Therefore, we decline to entertain the argument.

## Sufficiency of Evidence

Shane Buckman contends that the State's trial evidence was insufficient to support his conviction for possession of a dangerous weapon in violation of RCW 9.41.250. Buckman argues that the State showed his proximity to the brass knuckles, but failed to show constructive possession.

Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *State v.*

8

*Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Echeverria*, 85 Wn. App. 777, 782, 934 P.2d 1214 (1997). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Joy*, 121 Wn.2d at 339; *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is no less probative than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Under RCW 9.41.250, every person who "possesses any instrument or weapon of the kind usually known as . . . metal knuckles" is guilty of a gross misdemeanor. Possession may be actual or constructive. *Echeverria*, 85 Wn. App. at 783. To establish constructive possession, there must be some evidence from which a trier of fact can infer dominion and control. *State v. Spruell*, 57 Wn. App. 383, 389, 788 P.2d 21 (1990). This court examines the totality of the circumstances, including the proximity of the property and ownership of the premises where the contraband was found, to determine whether there is substantial evidence of dominion and control. *State v. Lakotiy*, 151 Wn. App. 699, 714, 214 P.3d 181 (2009).

Dominion and control means that the object may be reduced to actual possession immediately. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Mere proximity is not enough to establish constructive possession, however. *Spruell*, 57 Wn. App. at 389. Knowledge of the presence of contraband, without more, is insufficient to show

dominion and control to establish constructive possession. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003, 297 P.3d 67 (2013). The ability to reduce an object to actual possession is an aspect of dominion and control, but other aspects such as physical proximity should be considered as well. *State v. Chouinard*, 169 Wn. App. at 899; *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989). Exclusive control is not necessary to establish constructive possession. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004).

The totality of the circumstances in this case shows that Shane Buckman constructively, if not actually, possessed the brass knuckles. Buckman knew the brass knuckles were in the map pocket in front of him. Buckman's comment that the knuckles were a belt buckle shows familiarity with the object. Buckman sat nearest to the knuckles. Shane Buckman evidenced his ability to reduce the knuckles to his actual possession when he retrieved them from the map pocket and handed them to Officer Miller. Knowledge, proximity, and the capacity to reduce the knuckles to his possession combine to show that Shane Buckman constructively possessed the dangerous weapon.

## CONCLUSION

We affirm Shane Buckman's conviction for possessing a dangerous weapon.

No. 31440-5-III
*State v. Buckman*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

11