**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48696-2-II |
| Respondent, | |
| v. | |
| CAITLIN MIRANDA ALLRED, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Caitlin Allred appeals her unlawful possession of methamphetamine conviction.[1]  She argues that her conviction is supported by insufficient evidence because the State failed to prove that she had dominion and control over the methamphetamine.  We affirm.

FACTS

I.  BACKGROUND AND CHARGING

In September 2015, C.S.[2] worked as a confidential informant (CI) and arranged to meet Allred to buy heroin from her.  C.S. and Allred met in the bathroom of a store and Allred gave C.S. what turned out to be "fake" heroin.  1 Report of Proceedings (RP) at 31.  In October, police officers had C.S. follow up with Allred about the "fake" heroin and to arrange another buy.  1 RP

---

[1] RCW 69.50.4013.

[2] We use initials to protect the informant's confidentiality.

at 31. Allred was eventually charged with delivery of a material in lieu of a controlled substance, second degree robbery, and unlawful possession of methamphetamine.

## II. TRIAL

C.S., several law enforcement officials, and a forensic scientist for the Washington State Patrol Crime Lab testified for the State. C.S. tried to arrange a second buy with Allred to take place at the store where they met the first time. But Allred replied that she would rather meet at Allred's home. Three additional times during her testimony, C.S. referred to a travel trailer where she met Allred as Allred's home.

In October, C.S. met with Allred in the travel trailer. A search of C.S. before the attempted buy did not reveal any drugs on C.S. In the trailer, C.S. and Allred entered the bathroom together, Allred took the buy money from C.S., and Allred said, "'Don't ever call me again. Get out of here.'" 1 RP at 77.

C.S. was in the trailer for only three to four minutes before she exited and told awaiting officers that Allred had robbed her of the buy money. Police officers approached the trailer and asked the occupants to exit. A police officer immediately arrested Allred. Police officers then entered the trailer and removed Allred's boyfriend, Jack Daniels. Allred and Daniels gave consent for police to search the trailer and a police officer procured a search warrant as well.

Officers found two methamphetamine bongs, one methamphetamine pipe, and several baggies containing white residue. One of these baggies was seized from a drawer across from the bedroom and later testing confirmed it contained methamphetamine.

After the State rested, Daniels testified. Daniels owned the trailer. When asked if Allred was staying in the trailer "on a full-time basis," Daniels testified, "Well, I guess you could say that.

I mean, come and go." 2 RP at 209. On cross-examination, when asked again if Allred "was living with" him, Daniels said, "Yes." 2 RP at 224. According to Daniels, Allred kept a few of her belongings at the trailer. When the police arrived, Allred was talking to one of the other men in the bedroom. Daniels also testified that, in connection with the officers' discovery of drugs and drug paraphernalia in the trailer, he had pleaded guilty to possession of methamphetamine. The defense rested after Daniels's testimony.

The jury found Allred guilty of delivery of a material in lieu of a controlled substance and unlawful possession of methamphetamine and not guilty of robbery. Allred appeals only the unlawful possession conviction.

## ANALYSIS

Allred argues that insufficient evidence exists to support her conviction because the State merely established her proximity to the methamphetamine, but did not establish constructive possession.[3] We disagree.

### I. STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational jury could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

---

[3] Although Allred filed a statement of additional grounds, it is blank; therefore, we do not address it.

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

## II. RULES OF LAW: CONSTRUCTIVE POSSESSION

To establish unlawful possession of a controlled substance, the State must prove a defendant possessed methamphetamine or its salts and isomers without a valid prescription. RCW 69.50.4013(1), .206(d)(2). Possession of a controlled substance may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Actual possession requires physical custody. *State v. Cantabrana*, 83 Wn. App. 204, 206, 921 P.2d 572 (1996). Constructive possession is established by showing that the defendant had dominion and control over the controlled substance or the premises containing it. *State v. Callahan*, 77 Wn.2d 27, 31, 459 P.2d 400 (1969); *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004).

"Dominion and control" means that the item "may be reduced to actual possession immediately." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). "Exclusive control is not necessary to establish constructive possession," *Cote*, 123 Wn. App. at 549, but mere presence and proximity to the contraband is insufficient. *State v. Spruell*, 57 Wn. App. 383, 389, 788 P.2d 21 (1990). Physical proximity should be considered when evaluating whether dominion and control exist. *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989).

When a person has dominion and control over premises, it creates a rebuttable presumption that the person has dominion and control over items on the premises. *State v. Reichert*, 158 Wn.

4

App. 374, 390, 242 P.3d 44 (2010). We look at the totality of the circumstances to determine whether substantial evidence establishes circumstances from which the jury could reasonably infer that the defendant had dominion and control over the contraband. *Cote*, 123 Wn. App. at 549-50.

### III. SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION

Here, testimony established that when police arrived at the trailer, Allred was in the bedroom and the methamphetamine was found in a drawer across from the bedroom. The evidence of Allred's presence in the trailer and proximity to the methamphetamine alone would be insufficient to establish dominion and control over the methamphetamine. *Spruell*, 57 Wn. App. at 389. However, the State presented additional evidence that Allred lived at the trailer, considered the trailer her home, and thus had dominion and control over the premises. Accordingly, Allred had dominion and control over the methamphetamine. Sufficient evidence supports Allred's conviction for unlawful possession of methamphetamine.

Allred relies on *Cote*, *Callahan*, and *Spruell* to argue that the evidence here is insufficient to support a finding of constructive possession. Allred's reliance on these cases is unavailing.

### A. *COTE*

In *Cote*, officers noticed a stolen truck in the driveway of a home when they served an arrest warrant on the resident. 123 Wn. App. at 547-48. The resident told the officers that Cote arrived in the truck with another man. *Cote*, 123 Wn. App. at 548. The officers arrested Cote inside the house for an outstanding felony warrant. *Cote*, 123 Wn. App. at 548. Inside the truck, officers found a syringe and components of a methamphetamine lab, including jars containing chemicals. *Cote*, 123 Wn. App. at 548.

At trial, the State presented evidence that Cote was a passenger in the truck and his fingerprint was on one of the jars. *Cote*, 123 Wn. App. at 548. But Division Three of this court opined that Cote was not arrested in or near the truck, that Cote was seen as only a passenger, and that no evidence showed that the jar containing Cote's fingerprint was found in the passenger area of the truck. *Cote*, 123 Wn. App. at 550. The *Cote* court held that the State did not establish Cote's dominion and control of the truck or the contraband: the evidence established only that Cote was at one point in proximity to the jar and touched it. 123 Wn. App. at 550.

Here, Daniels confirmed that Allred lived with him in the trailer in October 2015 and kept belongings there. C.S. testified that the trailer was Allred's home. C.S. further testified that Allred told C.S. to "[g]et out" of the trailer. 1 RP at 77. And unlike in *Cote*, Allred was arrested *at* the trailer where the methamphetamine was found. This evidence demonstrates that Allred resided in the trailer and had greater dominion and control over the trailer than Cote had as the passenger of the truck.

### B. *CALLAHAN*

In *Callahan*, police found drugs on a houseboat, near the defendant, who admitted he handled the drugs earlier that day. 77 Wn.2d at 28-29. The defendant stated that he had stayed on the houseboat for two or three days before his arrest, but denied living there. *Callahan*, 77 Wn.2d at 28. Our Supreme Court held that where there was no evidence that the defendant resided at the houseboat or kept clothing or personal toilet articles on the houseboat, there was no showing that he had dominion or control over the houseboat. *Callahan*, 77 Wn.2d at 31.

The *Callahan* court also considered dominion and control over the drugs and noted that another individual testified that the drugs belonged to him, that he brought them onto the boat, that

6

he had not sold them or given them to anyone else, and that he had sole control over them. 77 Wn.2d at 31. This testimony was also substantiated by others who were on the boat at the time of the defendant's arrest and by persons who had seen him with the drugs earlier that day. *Callahan*, 77 Wn.2d at 31. The State did not contradict this evidence. *Callahan*, 77 Wn.2d at 31. Thus, the *Callahan* court held that only purely circumstantial evidence pointed to any dominion or control by the defendant over the drugs, and it would be unreasonable to rely on such evidence where "undisputed direct proof places exclusive possession in some other person." 77 Wn.2d at 31-32.

Unlike in *Callahan*, here the testimony showed that Allred maintained residence at the trailer. And here there was no undisputed direct proof placing exclusive possession of the methamphetamine with someone other than Allred. The police officer who searched C.S. testified that she did not find drugs on C.S. before the attempted buy. This establishes that C.S. did not bring the methamphetamine into the trailer. And although Daniels testified that he pleaded guilty to possession of methamphetamine, he did not testify that he had sole control over the methamphetamine.

## C. *SPRUELL*

Finally, in *Spruell*, the defendant was arrested in close proximity to cocaine found in a house, and his fingerprints were on a plate containing white powder residue. 57 Wn. App. at 384. The State did not present evidence that the defendant had dominion and control over the premises. *Spruell*, 57 Wn. App. at 387-88. Rather, the State argued that the defendant only had dominion and control over the drugs based on his proximity to the drugs and the fingerprint on the plate that appeared to have had cocaine on it. *Spruell*, 57 Wn. App. at 388.

7

Division One of this court observed that there was no evidence in the record of the defendant having any connection with the house or the cocaine except as a visitor and "being present and having a fingerprint on a dish which appeared to have contained cocaine immediately prior to the forced entry of the police." *Spruell*, 57 Wn. App. at 388. The *Spruell* court held that this evidence of presence in the home and proximity to the drugs was insufficient. 57 Wn. App. at 389.

Here, testimony established that when police arrived at the trailer, Allred was in the bedroom and the methamphetamine was found in a drawer across from the bedroom. As in *Spruell*, this evidence of Allred's presence in the trailer and proximity to the drugs is insufficient to establish dominion and control over *the methamphetamine*. 57 Wn. App. at 389. But unlike in *Spruell*, the State presented evidence that Allred lived at the trailer, considered the trailer her home, and thus had dominion and control over the premises.

## IV. CONCLUSION

We view the evidence and any inferences from the evidence in the light most favorable to the State. *Engel*, 166 Wn.2d at 576; *Homan*, 181 Wn.2d at 106. Based on the totality of the circumstances, a reasonable jury could have found that Allred lived at the trailer, and therefore Allred had dominion and control over the trailer and the methamphetamine. Through Daniels's testimony, Allred attempted to rebut this evidence, but the jury was free to disregard Daniels's testimony. It was reasonable for the jury to find, based on the State's evidence, that Allred lived at the trailer and therefore had dominion and control of the trailer and the methamphetamine. We hold that any rational jury could have found the elements of unlawful possession of

No. 48696-2-II

methamphetamine beyond a reasonable doubt. *Engel*, 166 Wn.2d at 576. Sufficient evidence supports Allred's unlawful possession of methamphetamine conviction.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.

9