[No. 796-1. Division One—Panel 2. October 26, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. JOHN LANCE EMERSON, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney, John E. Oswald,* and *David W. Hotchkin, Deputies,* for appellant.

*Koenigsberg, Brown, Sinsheimer, Stone & Meltzer* and *Ronald J. Meltzer,* for respondent.

JAMES, J.—John Lance Emerson is charged with the crime of unlawfully possessing dangerous drugs with the intent to sell. At the close of the state's case, his challenge to the sufficiency of the evidence was sustained. The state appeals from the judgment of dismissal which followed.

The state's evidence was that United States Customs Service officers were informed that a package from Pakistan received at the Seattle-Tacoma International Airport contained narcotic drugs. Customs agents inspected the package, which was bound in a light-colored woven fabric, and found that it contained a carved wooden elephant packed in newspapers of apparent Indian or Pakistani origin. An agent drilled some small holes into the elephant, and subjected the residue on the bit to a reagent field test. The test disclosed that the elephant contained cannabis sativa. The drill holes were plugged and stained, and the elephant was repackaged. The package was addressed to their informer, and the customs agents permitted him to claim it.

The informer, accompanied by a customs agent, drove from the airport to a prearranged meeting with Seattle police officers. Other customs agents followed the informer's car to the rendezvous.

The informer then drove his car to a Seattle residence which narcotics officers had earlier placed under surveillance. The informer parked his car and entered the house. He reappeared after a short time, accompanied by the defendant Emerson. Both walked to the informer's car, and Emerson removed the package. Accompanied by the informer, Emerson carried the package into the house. Five to 10 minutes later, the informer again left the house and returned to his car. He then lit a cigarette, which was a prearranged signal to the officers that the carved elephant

had been removed from its package. This information was relayed to a Seattle police detective, who immediately applied for and obtained a search warrant. The detective rushed the search warrant to the scene, arriving approximately half an hour after the informer had first entered the house.

While waiting for the detective to bring the search warrant, the officers had continued their surveillance. On several occasions, the officers observed occupants of the house looking from a rear window. On at least one occasion, an occupant came onto the back porch and peered around the general area at the rear of the house.

As the officers approached the front door of the house with the search warrant, they saw someone look out a front window and then hurriedly move toward the rear of the house. Believing that the occupants of the house suspected a search was imminent, the officers immediately forced the front door and entered.

As the officers entered, they saw Emerson moving toward the rear of the house. He was belligerent and demanded that the officers produce a search warrant. Six persons, including Emerson and the informer, were in the house. All were on the first floor, except a girl who was sleeping in an upstairs room. None of the other occupants offered any resistance or objection.

When asked to identify himself, Emerson told the officers that his name was "John Lance Johnson" and that he was a photographer. He said that a bag containing elaborate camera equipment found in the dining room was his. Emerson's wallet contained a selective service registration card, a library card, and a food stamp identification card, all bearing the name "John Lance Johnson."

After securing all of the occupants, the officers undertook a thorough search of the house, especially seeking the carved wooden elephant. From a fire in a first-floor fireplace, the officers were able to extract the remaining fragments of a burning Pakistani or Mid-Eastern newspaper

and the charred remnant of a light woven fabric resembling that in which the elephant had been wrapped.

The officers found that an area of the basement was equipped as a photographic darkroom. On the side of the basement opposite the darkroom they found a makeshift bed, a clothes rack, and two suitcases containing men's clothes. On a shelf beside the bed they found a University of Washington alumnus card issued to "John Lance Emerson." In the suitcase at the foot of the bed the officers found a checkbook containing checks bearing the printed names, "John Lance Emerson" and "Marilyn Emerson." They also found two Sears Roebuck credit cards issued to "John Lance Emerson" in the suitcase. On or near the bed they found a number of sheets of paper containing writings characterized by the officers as typical computations used by narcotics dealers in pricing drugs by the ounce.

At the head of the bed, beneath the mattress, one of the officers found a cellophane packet containing four pills which were later identified as the drug LSD. In the pocket of a man's sport jacket which was hanging on the clothes rack, they found an invitation to a birthday dinner addressed to "Lance." In the pocket they also found two lumps of material subsequently identified as a form of cannabis sativa known as hashish.

On the basement floor, at a point midway between the darkroom and the bed, one of the officers found an enameled pot containing a paper sack. The paper sack in turn contained 14 plastic bags of hashish, weighing 1,203.1 grams, and some unprocessed marijuana, weighing 2.1 grams. The pot also contained what appeared to be another "dealer sheet." The officers were able to correlate the weight figures on this sheet with the weights of the various packages of hashish found in the pot.

The basement also contained remnants of what appeared to have been wooden packing crates, on some of which the word "Pakistan" appeared in bold print. The officers found no identification in the basement pertaining to any of the other individuals who were in the house.

Some 15 to 30 minutes after the officers first entered the house, they found the carved elephant lying in the yard outside the house. It was not wrapped, and the only legible print produced by a laboratory examination was that of Emerson's right palm. When sawed in half, the hollow interior of the carved elephant yielded 1,198.4 grams of hashish.

The hashish found in the carved elephant, the hashish found in the enameled pot, and the hashish found in the jacket pocket all have a similar appearance. If sold in the Seattle retail market at the time it was confiscated, the hashish would have brought approximately $31,000.

As the trial judge viewed the evidence, the question presented was whether the evidence was sufficient to permit a jury to find that Emerson had "constructive" possession of the drugs. He concluded that a judgment of dismissal was compelled by the ruling in the case of *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969).

We do not agree. A criminal defendant's challenge to the sufficiency of the state's evidence admits the truth of the evidence. *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968). A trial judge must deny a challenge if any reasonable inference may be drawn from the state's evidence which will support a guilty verdict. *State v. Pristell,* 3 Wn. App. 962, 478 P.2d 743 (1970). Even though he believes that an inference consistent with innocence may also be reasonably drawn, a trial judge must nevertheless deny the defendant's challenge. It is for the jury, guided by proper instructions, to determine whether the evidence excludes every reasonable inference of innocence. *State v. Walters,* 56 Wn.2d 79, 351 P.2d 147 (1960).

The state's evidence established that Emerson took *actual* possession of the carved elephant in which a substantial quantity of hashish[1] was concealed. Concerning Emerson's possession of this hashish, we find that the ruling of *State*

---

[1]Hashish is a derivative of cannabis sativa, commonly called marijuana, a dangerous drug by statutory definition. RCW 69.40.063; RCW 69.40.060.

*v. Callahan, supra,* is inapposite because a question of "constructive" possession is not presented. *State v. Turner,* 4 Wn. App. 448, 481 P.2d 906 (1971). The apposite question is whether Emerson knew that the elephant contained hashish.

 The circumstances surrounding Emerson's actual possession of the carved elephant and the circumstances surrounding its disposal would reasonably support the inference that Emerson knowingly took delivery of the hashish and knowingly attempted to conceal it when he suspected an imminent intrusion by law officers. Scienter—here, the guilty knowledge that the carved elephant contained drugs—must usually be proven by circumstantial evidence. *State v. LaRue,* 5 Wn. App. 299, 487 P.2d 255 (1971). When the state has met its burden of proving either actual or constructive possession beyond a reasonable doubt, "the burden shifts to the defendant to explain away the possession as unwitting, lawful, or otherwise excusable." *State v. Callahan, supra* at 32.

As to the drugs found in the house, the evidence relied upon by the state to establish Emerson's possession was circumstantial. But again we find the Callahan ruling is inapposite. In *Callahan* the state sought to prove the defendant's constructive possession of drugs by evidence of his dominion and control over the premises in which the drugs were found. The analysis of the evidence which the state relied upon in *Callahan* is summarized by the statement that "[t]he single fact that [the defendant] had personal possessions, *not* of the *clothing* or *personal* toilet article type, on the premises is insufficient to support such a conclusion." (Italics ours.) *State v. Callahan, supra* at 31.

In this case there is substantial evidence to support a reasonable inference that Emerson exercised dominion and control over that area of the basement where the officers found a large quantity of hashish. Clothing (the coat) hanging by the bed contained a note addressed to "Lance" and two lumps of hashish. Emerson was the only "Lance" apprehended. Emerson was a photographer and the photo-

graphic darkroom was in the basement. No other occupant of the house claimed to be a photographer. Numerous papers and documents found near the basement bed contained either Emerson's true name or his alias. Finally, there was the direct evidence that Emerson took delivery of the carved elephant. Thus, both direct and circumstantial evidence are consistent with the inference that Emerson possessed all the hashish which the officers found.

The judgment of dismissal is reversed and the case is remanded for trial.

FARRIS, A.C.J., and SWANSON, J., concur.