# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

          v.

VINCENT WILLIAM BARBEE,

          Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 73027-4-I

UNPUBLISHED OPINION

FILED: March 7, 2016

DWYER, J. — Vincent Barbee appeals from the judgment entered on a jury's verdict finding him guilty of one count of unlawful possession of a firearm in the first degree. Barbee contends that insufficient evidence was presented to prove either that he possessed a firearm or that he did so knowingly. Finding no error, we affirm.

I

On July 28, 2014, U.S. Marshalls were actively searching for Barbee in the Marysville area because he had active warrants for his arrest. Deputy U.S. Marshall John Westland was looking for a specific vehicle—a green Pontiac Grand Am—and learned over the radio that the vehicle he sought had been spotted pulling into the Arco gas station located at the intersection of Fourth and Beach streets. Westland saw Barbee park the green Grand Am. Jennifer Olson,

whom Westland recognized as Barbee's known girlfriend, was seated in the vehicle's passenger seat.

Westland coordinated the arrest plan via radio while Barbee made a purchase inside the convenience store attached to the Arco. When Barbee exited the convenience store, he walked toward the green Grand Am but, upon seeing law enforcement officers approaching, he turned around and ran north. Ultimately, Barbee ran only 40 to 50 yards across Beach Street to a Chevron gas station across the street. Finding his escape routes blocked, Barbee turned to a deputy and said, "Okay. I give up," then threw his cell phone and "proned himself out on the ground."

Deputies searched the green Grand Am that Barbee had been driving. Deputy U.S. Marshall Justin Strock observed that "the trunk and the entire of the backseat, even up to the front seat, was kind of strewn with men's and women's clothes. A lot of things piled up." Deputy U.S. Marshall Robert Gerg opened the glove compartment and found a credit card bearing Barbee's name as well as a change of address form in Olson's name. Inside the trunk, Gerg located a small, black metal lockbox. It was located "as you face the trunk, on the left side behind the wheel well, against the fender." He handed this locked box to Washington State Department of Corrections probation officer Michael Woodruff. Immediately adjacent to the lockbox in the trunk was a green envelope folder containing "a bunch of documents with [Barbee's] name on [them]." These documents included blank checks with Barbee's name on them, pay stubs issued to Barbee, and a Cash Express loan application in Barbee's name. The folder

also contained an address book with business cards and contact information inside, with the front page bearing the name "Vince Barbee."

Woodruff searched the vehicle as well and noticed the extremely cluttered contents. He located a Tulalip Players card in Barbee's name at the very bottom of the vehicle's full center console. He found another players card in Barbee's name inside a backpack in the backseat.

Woodruff attempted to open the lockbox that Gerg had located in the trunk. He tried all of the keys he could find, including the keys on the same key ring as the vehicle's ignition key and multiple loose keys found on the vehicle's floorboard. None of them opened the lockbox. Woodruff then located a small knife on the vehicle's floorboard and was able to "gently" pry the lockbox open with the knife. Inside the lockbox he found a small handgun and one round of .22 caliber ammunition. He subsequently tested the firearm and confirmed that it was functional.

Deputy Marcus Dill confronted Barbee at the scene of his arrest about the handgun that was found in the trunk of his vehicle. Barbee claimed that the car was not his and that he had never accessed the trunk.

On August 13, 2014, the State charged Barbee by information with one count of unlawful possession of a firearm in the first degree and further alleged that Barbee was under community custody when the crime occurred. RCW 9.41.040(1); RCW 9.94A.525(19). The information was amended on October 17, 2014 in order to identify with specificity Barbee's prior second degree burglary

conviction as the "serious offense" that elevated the charge to first degree status. RCW 9.41.010(3)(a), (21)(a). Barbee exercised his right to a jury trial.

At trial, the State called as witnesses the law enforcement officers who were involved in Barbee's arrest and the subsequent search of the green Grand Am. The State also called Olson as a witness. She testified that, at the time of Barbee's arrest, the two were dating and living together at a mutual friend's house. She denied that they were living out of their car, instead claiming that the car was so full of personal items because they were "transporting [their] stuff from one place to the other." On the day of Barbee's arrest, Olson had told the officers that she was in the process of purchasing the vehicle but did not yet consider it hers because she was still making payments toward it. At trial, however, she acknowledged that she and Barbee were in the process of buying the car *together*.

When asked to describe the contents of the vehicle on the day of the arrest, Olson acknowledged that the contents belonged both to her and to Barbee. She specifically recalled that the vehicle's trunk contained her own speakers and Barbee's "bank information." When asked if she had participated in loading property into the vehicle's trunk, Olson answered that she had "helped load the whole car," implying that she and Barbee had combined their efforts to load it. The prosecutor then asked whether it was true that Barbee had been the only one who loaded the trunk. Olson answered, "No, because I helped load the car."

The prosecutor then presented Olson her handwritten statement, signed under penalty of perjury, which she had given to the officers on the day of Barbee's arrest. Olson admitted that she had written, "Only Vince has been in the trunk." However, Olson asserted that her written statement was false and that Dill had threatened to throw her in jail if she did not write what he told her to write. She also claimed that she did not know "what perjury really mean[t]."

Dill denied making any threats or telling Olson what to write in her statement. Furthermore, Woodruff testified that he recalled Olson stating on the date of the arrest that Barbee was the only one who had loaded anything into the trunk for about a week or more.

The State also presented testimony about extensive—but, ultimately, inconclusive—forensic testing that was performed on the lockbox and the handgun that it contained. A Washington State Patrol latent print examiner, James Luthy, located one fingerprint on the top of the lockbox and excluded Barbee as the person who left the print. There was no way to determine how many other people had touched the lockbox or how long the lone fingerprint had been on the lockbox. The handgun did not have any prints on it, which was of no surprise to Luthy, as it is "pretty rare" for an impression to be left on a brushed metal surface.

Another State Patrol forensic scientist, Mariah Low, discussed DNA (deoxyribonucleic acid) testing performed on the lockbox and the handgun. She swabbed the sides, top, and handle of the lockbox in an effort to collect "touch

DNA,"[1] and determined that the collected sample contained a mixture of at least three people's DNA. However, the quantity of DNA was too small to include or exclude Barbee (who voluntarily provided a known DNA reference sample) as a contributor to the lockbox touch DNA mixture. Likewise, Low swabbed the handgun to collect potential touch DNA and identified a mixture of DNA contributed by at least three people. But, just as the touch DNA on the lockbox had been, the handgun touch DNA sample was insufficient to include or exclude Barbee as a contributor.

Just before the State rested, the court instructed the jury pursuant to the parties' stipulation that "the defendant has previously been convicted of a serious offense for purposes of proving that element of the charge of unlawful possession of a firearm in the first degree." The jury returned a verdict of guilt. The court imposed a DOSA sentence[2] of 50.75 months in prison, followed by 50.75 months on community custody.

II

Barbee contends that insufficient evidence supports his conviction. This is so, he asserts, because the evidence adduced at trial does not support the jury's finding that he knowingly possessed a firearm. We disagree.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime

---

[1] This is also known as "cellular DNA." Low testified that it is DNA that comes from skin cells.

[2] Drug Offender Sentencing Alternative, or DOSA, is an alternative to traditional incarceration that is designed to provide chemical dependency treatment and supervision for addicted offenders.

beyond a reasonable doubt." State v. Rempel, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The pertinent statute provides that

> [a] person . . . is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . in this state or elsewhere of any serious offense as defined in this chapter.

RCW 9.41.040(1)(a).

Hence, as the court's instructions to the jury provided, in order for the jury to convict Barbee as charged, it was required to find, in pertinent part, that, "on or about July 28, 2014, the defendant knowingly had a firearm in his possession or control." Jury Instruction 8.

Barbee contends that the State failed to prove either knowledge or possession.

### A

Barbee first asserts that the State failed to prove that he possessed the gun that was located in the trunk of the green Grand Am.

"Possession may be actual or constructive." State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). Actual possession requires the item be in the actual physical custody of the person charged with the crime. State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Herein, Barbee did not have

actual physical custody of the gun. Thus, the State was required to prove that he had constructive possession of it.

"[C]onstructive possession can be established by showing the defendant had dominion and control over the firearm or over the premises where the firearm was found." Echeverria, 85 Wn. App. at 783. No single factor is dispositive in determining dominion and control; the totality of the circumstances must be considered. State v. Collins, 76 Wn. App. 496, 501, 886 P.2d 243 (1995). The ability to reduce an object to actual possession is an aspect of dominion and control. Echeverria, 85 Wn. App. at 783. Dominion and control does not have to be exclusive to establish constructive possession, State v. Porter, 58 Wn. App. 57, 63 n.3, 791 P.2d 905 (1990), but close proximity alone is not enough to establish constructive possession. State v. Spruell, 57 Wn. App. 383, 388-89, 788 P.2d 21 (1990). "Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was either the owner of the premises or the driver/owner of the vehicle where contraband was found." State v. Chouinard, 169 Wn. App. 895, 899-900, 282 P.3d 117 (2012); see, e.g., State v. Bowen, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010); State v. Turner, 103 Wn. App. 515, 521, 13 P.3d 234 (2000); Echeverria, 85 Wn. App. at 783; State v. McFarland, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), aff'd, 127 Wn.2d 322, 899 P.2d 1251 (1995); State v. Reid, 40 Wn. App. 319, 326, 698 P.2d 588 (1985).

Herein, the evidence adduced at trial was replete with indications that Barbee exercised dominion and control over the premises in which the firearm

was found, the green Grand Am. For example, it was uncontroverted that Barbee drove the vehicle and possessed keys to it. The evidence also established that Barbee and Olson utilized the vehicle as a storage space for their possessions, if not also as a de facto residence. Moreover, Olson told police that, although both she and Barbee had used the vehicle, only Barbee had accessed the trunk.[3] As set forth above, this evidence is sufficient to support an inference—upon which the jury was entitled to rely—that Barbee had dominion and control over not only the vehicle, but also the firearm located within it.[4]

Moreover, Barbee's ability to take actual possession of the handgun was demonstrated through the testimony of Woodruff, who was able to open the lockbox and access the gun using a knife that he found on the floorboard of Barbee's vehicle. Barbee had access to the same knife. Barbee also had possession of the key to the trunk that contained the lockbox. Therefore, Barbee, too, could have used the knife to gently "pop" open the lockbox.[5]

The record contains sufficient evidence to support the jury's determination that Barbee had "dominion and control" over the gun and, thus, had constructive possession of the firearm.

---

[3] Hearsay statements admitted without objection are competent evidence sufficient to support a finding that the statement is true. See State v. Rochelle, 11 Wn. App. 887, 889, 527 P.2d 87 (1974).

[4] Barbee's argument to the contrary relies upon the fact that he possessed the vehicle in common with Olson. While this is true, at least as regards the use of the vehicle in general (but not as regards access to the vehicle's trunk), it is of no moment to our analysis. As set forth above, exclusive ownership or possession is not required to establish constructive possession.

[5] Barbee's further argument to the contrary relies on the absence of DNA evidence affirmatively linking him to the firearm. He cites no authority for the proposition that such evidence is required to sustain his conviction.

B

Barbee next asserts that the State failed to prove that he *knowingly* possessed the gun found in the trunk of the green Grand Am.

As the jury was instructed,

> A person knows or acts knowingly or with knowledge with respect to a fact or circumstance when he is aware of that fact or circumstance. It is not necessary that the person know that the fact or circumstance is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he acted with knowledge of that fact.

Jury Instruction 10; accord RCW 9A.08.010(1)(b).

"Knowledge may be inferred when the defendant's conduct indicates the requisite knowledge as 'a matter of logical probability.'" State v. Warfield, 119 Wn. App. 871, 884, 80 P.3d 625 (2003) (quoting State v. Stearns, 61 Wn. App. 224, 228, 810 P.2d 41 (1991)). Although knowledge may be inferred from the surrounding facts and circumstances, it may not be inferred from evidence that is "'patently equivocal.'" State v. Vasquez, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting State v. Woods, 63 Wn. App. 588, 592, 821 P.2d 1235 (1991)). "A reasonable inference of knowledge of the item possessed can come from an extended period of control of the premises." State v. Gerke, 6 Wn. App. 137, 142, 491 P.2d 1316 (1971); see, e.g., State v. Weiss, 73 Wn.2d 372, 438 P.2d 610 (1968); State v. Emerson, 5 Wn. App. 630, 489 P.2d 1138 (1971).

Herein, the evidence adduced at trial indicated that Barbee knew of the gun that was located within the trunk of the Grand Am. Testimony established that Barbee and Olson, who were purchasing the vehicle together, had enjoyed possession of the Grand Am for approximately one month at the time of Barbee's arrest. Moreover, they had used the vehicle not only for travel, but also as a storage space. Barbee's and Olson's possessions were "piled up" inside the vehicle—in both the passenger compartment and the trunk. In the trunk, immediately adjacent to the lockbox in which the gun was found, was a green envelope folder containing documents with Barbee's name on them. These documents included blank checks with Barbee's name on them, pay stubs issued to Barbee, and a Cash Express loan application in Barbee's name. Furthermore, evidence was presented that, on the date of Barbee's arrest, Olson told police that "only" Barbee had accessed the vehicle's trunk. From this evidence of Barbee's control over the vehicle, particularly the trunk, for an extended period of time, there is a reasonable inference— upon which the jury was free to rely—that Barbee knew of the presence of the firearm in the vehicle.

Additionally, the State presented evidence that Barbee tried to minimize his connection to the vehicle, and the trunk in particular, when speaking to officers on the day of his arrest. Specifically, Barbee claimed that day that the vehicle was not his and that he had never accessed its trunk. The jury reasonably could have perceived Barbee's efforts in this

regard as evidence of his consciousness of guilt and, thus, as evidence of his knowledge of the presence of the gun in the vehicle's trunk.

The record contains sufficient evidence to support the jury's determination that Barbee knew that a firearm was located in the trunk of his vehicle. Therefore, sufficient evidence was presented to support Barbee's conviction.

Affirmed.

We concur:

_Trickey, J_